Edward C. FREDERICKS, Plaintiff,
Appellant,

v.

Major General Vahan VARTANIAN, et
al., Defendants, Appellees.

No. 82–1299.

United States Court of Appeals,
First Circuit.

Argued Sept. 16, 1982.

Decided Dec. 7, 1982.

Roderick MacLeish, Jr., with whom Robert F. Sylvia and Fine & Ambrogne, Boston, Mass., were on brief, for plaintiff, appellant.

Joan C. Stoddard, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, DAVIS * and BOWNES, Circuit Judges.

DAVIS, Circuit Judge.

Plaintiff Edward C. Fredericks appeals · from adverse decisions rendered on cross

* Of the Federal Circuit, sitting by designation.

motions for summary judgment on three counts of his complaint in the District Court, under 42 U.S.C. § 1983, against defendant officials of the Massachusetts Army National Guard (MANG) for alleged violation of his constitutional and statutory rights.[1] 529 F.Supp. 264. We affirm.

Prior to February 7, 1977, Fredericks held the rank of First Sergeant in the MANG and was connected with the 726th Finance Company of the 26th Infantry Division Support Command. Shortly before that date, at an open house of the Finance Company, he was questioned by defendant-appellee Major General Nicholas Del Torto, a high-ranking officer of MANG, concerning the performance of Fredericks' duties; in the course of that interrogation, which is alleged by plaintiff to have been humiliating and embarrassing to him, he made a disrespectful remark to General Del Torto. The next day, Fredericks was reduced by the commander of the 26th Infantry Division Support Command from First Sergeant to Sergeant First Class pursuant to Massachusetts General Laws, ch. 33, § 74(a); he was also transferred to the 26th Infantry Division Material Management Center in Boston. Plaintiff tried unsuccessfully to resolve the matter with General Del Torto, and also appealed without relief to the Governor of Massachusetts, as Commander-in-Chief of the MANG.[2] This suit was then brought, asserting violations of federal due process, deprivation of a property right without due process, and violations of the Massachusetts statute governing the demotion ordered here.

 It is agreed that the federal procedural claims of violation of due process can be vindicated only if there has been a deprivation of the 14th Amendment's protection of liberty or property. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiff does claim

a property right in his status as First Sergeant. A property right in such a state position or state employment can be created by state law (*id.* at 577, 92 S.Ct. at 2709) if state (or municipal) law provides "that a particular employment relationship will continue unless certain defined events occur" or affirmatively recognizes "an entitlement to particular job conditions." *Confederation of Police v. City of Chicago,* 547 F.2d 375, 376 (7th Cir.1977); *see also Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Fredericks says that he had such a right to continue as First Sergeant until he was properly demoted, but that he was illegally reduced in rank. His sole reliance for the claim that he was improperly demoted is Mass.Gen.Laws, ch. 33, § 74(a)—relating to MANG—which provides:

*Under such regulations as the Commander-in-Chief may prescribe,* any commanding officer may, in addition to or in lieu of admonition or reprimand, impose one of the following disciplinary punishments for minor offenses without the intervention of a court-martial: * * * (2) upon enlisted personnel of his command * * * reduction to the next inferior grade." (emphasis added)

The argument is that this non-judicial punishment of reduction to the next inferior grade (which was imposed on plaintiff) cannot be directed unless there are legitimate regulations authorizing it—and that none had been issued here. In the absence of such regulations, it is said, plaintiff could have been demoted only by a court-martial (which did not occur). It follows, we are told, that Fredericks was incorrectly denied a significant right, under both the Due Process Clause and the Massachusetts law.

 The initial question is whether plaintiff was deprived of such a right given him by state law.[3] Assuming that proper regu-

---

1. The District Court has made the necessary determinations for a final partial judgment under Rule 54(b), F.R.C.P.

2. Defendant-appellees do not contend that Fredericks failed to exhaust his administrative remedies.

3. If Fredericks did not have that right, we need not consider whether, if that right did exist, it

lations (authorizing the specified non-judicial punishment) had not been issued,[4] we reach the critical issue of whether the regulations were a prerequisite to use of the authority to impose the sanction of one-grade reduction, or whether the statute merely gives the Commander-in-Chief, if he wishes, the authority to limit or circumscribe the imposition of that penalty. The text of the section, by its use of the permissive "may" ("may prescribe"), strongly suggests that the legislature chose the latter meaning. Massachusetts follows the general principle that "may" in a statute "is a word of permission and not of command." *Cline v. Cline,* 329 Mass. 649, 652, 110 N.E.2d 123, 125 (1953). There is, moreover, no indication that here the legislature intended the opposite meaning. On that permissive reading, the Governor had the authority, if he desired, to issue regulations either limiting or mandating imposition of specified non-judicial punishment, or prescribing procedures, but he was not required to do so in order to make the section operative by itself. In other words, the statute was and remained in effect until the Governor limited the authority by issuing restrictive or procedural regulations.[5]

This understanding of the statute's regulatory phrase as wholly permissive is supported by the history of its federal equivalent and prototype, Article 15 of the Uniform Code of Military Justice (and the predecessors of that provision). Article 15 authorizes comparable non-judicial penalties for minor offenses in the federal forces, and similarly to § 74(a) commences with the phrase: "Under such regulations as the President may prescribe." Pub.L. 81–506, ch. 169, § 1, 64 Stat. 112 (now codified at 10 U.S.C. § 815).[6] Referring to this nonjudi-

cial punishment, the Senate Committee said (in reporting out some amendments to Article 15, including the specific grant of Secretarial power to issue additional regulations): "The authority for non-judicial punishment * * * predates the 1950 code [the Uniform Code of Military Justice] by many years. It has been acknowledged over a long period that military commanders should have authority to impose non-judicial punishment as an essential part of their responsibilities to preserve discipline and maintain an effective force," and significantly added:

> Under both the present Article 15 and the proposed amendments, the President or the Secretary concerned may, by regulations, place limitations on the powers granted in the article with respect to the kind and amount of punishment authorized, the categories of commanding officers or warrant officers in command authorized to exercise those powers, and the applicability of the article to those demanding trial by court-martial.

S.Rep. No. 1911, 87th Cong., 2d Sess. (1962), U.S.Code Cong. & Admin.News, pp. 2379, 2386. Against the background of this history, it would be especially odd for the Massachusetts legislature to insist that, until the Governor issued regulations, court-martial was the only method of disciplining national guardsmen for minor offenses like that committed here.

We conclude that appellant's understanding of § 74(a) is incorrect, and that under that statute Fredericks was fully subject to reduction in grade by determination of his commanding officer, without a court-martial, that he had committed a minor offense. He does not contend that the

created or confirmed a sufficient property right enforceable under section 1983.

**4.** There were regulations, not promulgated by the Governor (the Commander-in-Chief of MANG), but appellees do not press the contention that those regulations fit the opening phrase of § 74(a), *supra.*

**5.** Fredericks' response seems to be that "may" was used because the legislature wished to allow the Governor to foreclose any use of

non-judicial punishment by refusing to issue any regulations at all, but that supposition is too strained for acceptance; if the Governor wished to forestall any use of § 74(a) he could simply issue a regulation saying so.

**6.** The same was true of Article 104 of the prior Articles of War which also authorized such non-judicial punishment. Act of June 4, 1920, 41 Stat. 759, 808, as amended by the Act of June 24, 1948, 62 Stat. 641.

offense of using disrespectful language to his superior was other than "minor", nor does he urge that, aside from his rejected claim that nothing could be done under § 74(c) until the Governor promulgated regulations, the statute was infringed.[7] Plaintiff was thus not protected by state law against the very demotion he suffered through the mechanism of § 74(a). We note, further, that he does not ask us to review the appropriateness of the penalty or whether he actually uttered the disrespectful words. In any event, federal courts could not review those questions unless, perhaps, the complainant had a state-created property right which was violated, and we have just determined that Fredericks had none such. Cf. Pauls v. Secretary of Air Force, 457 F.2d 294, 297 (1st Cir. 1972).

Count IV of the complaint alleged that, as a matter of state law, Fredericks' demotion violated § 74(a). Our discussion of the federal claims (counts I and II) shows that this charge cannot be sustained. If count IV is treated as pendent to the federal claims, the state claim must likewise be rejected. It is unnecessary to consider whether plaintiff has a private cause of action under that state statute.

The district court's views accorded with those we have expressed, and accordingly its decision is

*Affirmed.*

---

**7.** The decisions plaintiff cites (primarily *Conn v. United States,* 376 F.2d 878 (Ct.Cl.1967); *Hagarty v. United States,* 449 F.2d 352 (Ct.Cl. 1971); and *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979)) are inapposite because they all concerned employees or servicemen who had been disciplined in violation of governing legislation or regulations. That is not this case.