**Jong Hee SMALL, Personal Representative of the Estate of Delbert Small, Plaintiff,**

v.

**The INHABITANTS OF the CITY OF BELFAST and James Murphy, Defendants.**

**No. Civ. 80-1125-B.**

United States District Court, D. Maine.

Oct. 2, 1985.

Harold L. Lichten, Stephen P. Sunen-blick, Portland, Me., for plaintiff.

Francis C. Marsano, Belfast, Me., Peter J. DeTroy III, James D. Poliquin, Portland, Me., for defendants.

## MEMORANDUM DECISION AND OR-DER ACCEPTING MAGISTRATE'S RECOMMENDED DECISION

CYR, Chief Judge.

## I. BACKGROUND

On August 25, 1980, plaintiff's testate, Delbert Small (Small), filed the original complaint in this section 1983 action alleging that he was discharged from his position as security guard at the Waldo County General Hospital as a result of a communication from defendant James Murphy, City Manager of Belfast, Maine, informing the hospital that Small had been found in possession of a stolen snowplow and that Small's appointment as a special police officer would be revoked. The court's Memorandum Opinion and Order of September 23, 1982, *see Small v. Inhabitants of Belfast*, 547 F.Supp. 761 (D.Me.1982), details the allegations of the original complaint.

In its order of September 23, 1982, the court dismissed the original complaint on the basis that it was not filed within two years of the accrual of the cause of action. The court concluded that the section 1983 claim, though phrased in "due process" terms, essentially was predicated on the alleged defamatory communication by the city manager, which resulted in Small's discharge by the hospital, a private employer, and injured Small's reputation in the community. Accordingly, the court held that the most analogous state law cause of action would be defamation and that the statute of limitations to be "borrowed" would be Me.Rev.Stat.Ann. tit. 14, § 753 (1964), the two-year limitations period applicable to most intentional torts affecting personal interests, including slander and libel. The court rejected plaintiff's argument that the residuary six-year limitations period of Me. Rev.Stat.Ann. tit. 14, § 752 (1964) applies to the claim by reason of its characterization as a denial of due process.

On October 7, 1982 plaintiff moved to amend the complaint. On February 2, 1983 the court granted the motion to amend in order to permit plaintiff to assert a constitutional claim for deprivation of a property interest without due process of law, consisting of the city manager's alleged revocation of Small's status as a special police officer. The court denied the motion to amend the complaint insofar as it sought to assert a "due process" claim for injury to Small's reputation, resulting from the alleged defamatory statements of the city manager.

An amended complaint was filed on February 9, 1983, alleging that Small had a property interest in his position as special police officer for the City of Belfast and that his status as a special police officer was revoked without due process. It is alleged that the denial of due process resulted in the loss of Small's position at the Waldo County Hospital, impeded him in the search for other employment and damaged his reputation. Plaintiff also asserts pendent state statutory and constitutional claims.

On April 15, 1983, defendants moved to dismiss and, alternatively, for summary judgment, asserting that the amended complaint failed to state any claim not barred by the applicable statute of limitations. Defendants also assert that the pleadings, affidavits and depositions establish the absence of any genuine issue of material fact,

thus entitling defendants to judgment as a matter of law. Following a hearing, the United States Magistrate issued a recommended decision on January 17, 1984, granting the motions to dismiss, as well as summary judgment for the defendants, on the basis that the two-year limitations period of the Maine Tort Claims Act, Me.Rev. Stat.Ann. tit. 14, § 8110 (1977), barred plaintiff's section 1983 claim. The Magistrate rejected defendants' contention that the 30-day limitations period of Me.R.Civ.P. 80B should be borrowed for application to a section 1983 claim. Defendants' other contentions, relating to the borrowing of the limitations period applicable to defamation claims, Me.Rev.Stat.Ann. tit. 14, § 753, and the period applicable to claims under the Maine Human Rights Act, Me.Rev.Stat. Ann. tit. 5, § 4613(2)(C) (Supp.1984–85), were not reached by the Magistrate. Nor did the Magistrate consider defendants' arguments (1) that there remains no genuine issue as to the fact that Small's special police officer status was never revoked by defendants, and (2) that Small had no constitutionally cognizable property interest in his status as a special police officer because the appointment gave rise to no employment relationship between Small and the city, but merely authorized Small to exercise certain police powers in the course of his private employment with the hospital. Plaintiff objected to the Magistrate's recommended decision on January 25, 1984, arguing that the residuary six-year limitations period of section 752, rather than the two-year limitations period of the Maine Tort Claims Act, applies to the section 1983 claim alleged in the amended complaint.

Subsequent to the Magistrate's recommended decision, the Supreme Court, in *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (U.S.1984), issued a decision which buttressed the Magistrate's conclusion that the 30-day limitations period of Me.R.Civ.P. 80B would not be appropriate for application to plaintiff's section 1983 due process claim. *Dictum* in

*Burnett* casts doubt on the propriety of applying Maine's two-year tort limitations period to this section 1983 claim as recommended by the Magistrate. —— U.S. at —— n. 18, 104 S.Ct. at 2932 n. 18.

In another significant development following the Magistrate's recommended decision, the Supreme Court, on October 2, 1984 granted certiorari, —— U.S. ——, 105 S.Ct. 79, 83 L.Ed.2d 28, to review a decision by the Tenth Circuit, *Garcia v. Wilson*, 731 F.2d 640 (10th Cir.1984), which examined the divergent approaches among the courts of appeals and chose to apply a single state limitations period to all section 1983 claims.

On April 17, 1985 the Supreme Court issued its decision in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (U.S.1985), and the parties briefed the issue of the impact of *Wilson* on the case at bar.

## II. STATUTE OF LIMITATIONS

### A. *Wilson v. Garcia*

The Magistrate's recommendation that the Maine Tort Claims Act two-year limitations period should govern the present action, although supported by some authority at the time of his decision,[1] is contrary to the direction provided in the recent Supreme Court decisions in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (U.S.1985), and *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). *Burnett* and *Wilson* make it clear that the two-year limitations period of the Maine Tort Claims Act does not apply to plaintiff's section 1983 claim.

In *Burnett*, the Court noted with approval the following statement from *Pauk v. Board of Trustees*, 654 F.2d 856 (2d Cir. 1984), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).

"It would be anomalous for a federal court to apply a state policy restricting remedies against public officials to a federal statute that is designed to augment

---

**1.** *See Aitchison v. Raffiani*, 708 F.2d 96, 100–103 (3d Cir.1983); *but see Pauk v. Board of Trustees*, 654 F.2d 856 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980); *Pearman v. Walker*, 512 F.Supp. 228 (D.R.I.1981).

remedies against those officials, especially a federal statute that affords remedies for the protection of constitutional rights. [654 F.2d at 862.]"

—— U.S. at —— n. 18, 104 S.Ct. at 2932 n. 18.

In *Wilson*, the Court rejected the view of the New Mexico Supreme Court, *De Vargas v. New Mexico*, 97 N.M. 563, 642 P.2d 166 (1982), that the New Mexico Tort Claims Act supplied the appropriate limitations period for section 1983 actions, concluding instead that "Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials." —— U.S. at ——, 105 S.Ct. at 1949.

*Wilson* also rejects the "settled practice" of most federal courts of appeals and state courts, which have looked to the facts underlying the particular section 1983 claim for an appropriate state law analog. *See Wilson v. Garcia*, —— U.S. at ——, 105 S.Ct. at 1950–52. (O'Connor, J., dissenting).[2] *Wilson* holds that all section 1983 actions are to be characterized, for limitations purposes, as "tort action[s] for the recovery of damages for personal injuries," —— U.S. at ——, 105 S.Ct. at 1949, and are to be governed by the state's "one most appropriate statute of limitations for all § 1983 claims." *Id.* Though in part fashioned with a view to simplifying the task of identifying the appropriate statute of limitations for section 1983 actions, *id.* at ——, 105 S.Ct. at 1947, *Wilson* remains difficult to apply in jurisdictions, such as Maine, which have more than one limitations period for tort actions for the recovery of damages for personal injuries.

Section 753 of Me.Rev.Stat.Ann. tit. 14 (1964) prescribes a two-year limitations period for "[a]ctions for assault and battery, and for false imprisonment, slander, libel and malpractice of physicians and all others engaged in the healing art...." The six-year residuary limitations period of Me.

Rev.Stat.Ann. tit. 14, § 752 (1964), while not mentioning "personal injury" claims, applies by default to all other such claims, except for those instituted against certain professionals.[3]

Following the issuance of its *en banc* decision in *Garcia v. Wilson*, 731 F.2d 640, but prior to the Supreme Court's affirmance, the Tenth Circuit had occasion to apply its own holding that "every section 1983 claim is in essence an action for injury to personal rights," 731 F.2d at 651, for purposes of selecting the appropriate state limitations period. In *McKay v. Hammock*, 730 F.2d 1369 (10th Cir.1984), the court was faced with a Colorado statutory scheme with two "tort" limitations periods: a one-year period for "assault and battery, false imprisonment, slander, and libel," Colo.Rev.Stat. § 13–80–102 (1973), and a six-year period for "actions of assumpsit, or on the case founded on any contract or liability, express or implied," Colo.Rev.Stat. § 13–80–110 (1973).

The Tenth Circuit concluded that Colorado's common law distinction between trespass actions and actions on the case rendered both the one-year and six-year limitations periods "irrelevant" and inapplicable to a section 1983 claim for unlawful arrest. The court declined to borrow either of these periods, but instead chose Colorado's three-year residuary period, Colo.Rev.Stat. § 13–80–108(1)(b).

In *Mismash v. Murray City*, 730 F.2d 1366 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2111, 85 L.Ed.2d 476 (U.S. 1985), involving a claim of excessive force during an arrest, the court found no Utah statute of limitations "expressly applicable to actions for injury to the rights of others," and, therefore, applied Utah's four-year residuary period, Utah Code Ann. § 78–12–25(2) (1953), which governs personal torts except for "libel, slander, assault, battery, false imprisonment or seduc-

---

**2.** Among these courts is the First Circuit. *See, e.g., Gashgai v. Leibowitz*, 703 F.2d 10 (1st Cir. 1983).

**3.** Negligence actions against architects and engineers are governed by a four-year limitations

period, Me.Rev.Stat.Ann. tit. 14, § 752–A, and actions for "property damage, bodily injury or death against a ski area [or tramway] owner or operator ... or its employees" must be commenced within two years, Me.Rev.Stat.Ann. tit. 14, § 752–B.

tion," the latter being governed by the one-year period in Utah Code Ann. § 78–12–29(4) (1953). 730 F.2d at 1367. The court provided no explanation for its choice between these two "personal torts" limitations periods.

In *Hamilton v. City of Overland Park, Kansas,* 730 F.2d 613 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2111, 85 L.Ed.2d 476 (U.S.1985), involving a claim for unlawful arrest, the court applied the Kansas two-year limitations period for "action[s] for injury to the rights of another, not arising on contract, and not herein enumerated," Kan.Stat.Ann. § 60–513(a)(4) (1976), finding that this statute fit nicely with its own holding in *Garcia v. Wilson,* 731 F.2d 640, that all section 1983 claims "should be characterized as actions for injury to the rights of another." 730 F.2d at 614. The statute of limitations selected by the district court, Kan.Stat.Ann. § 60–514(2) (1976) [one-year limitations period for "[a]n action for assault, battery, malicious prosecution, or false imprisonment"], was rejected by the Tenth Circuit without comment, notwithstanding that such torts also constitute injuries to the rights of another.

Thus, in *Mismash* and *Hamilton* the Tenth Circuit adopted limitations periods applicable principally to *negligence* personal injury actions. The result in *McKay,* which rejected both Colorado limitations periods applicable to personal injury actions and chose instead the Colorado residuary limitations period, is somewhat difficult to reconcile either with *Mismash* or *Hamilton* or with the Tenth Circuit's holding in *Wilson.* However, inasmuch as McKay's complaint was timely filed under the three-year residuary period, the court's rejection of the six-year period for actions "on the case" does not appear to have been necessary to its decision that the complaint was timely filed.

Since the Supreme Court decision in *Wilson v. Garcia, supra,* the Eleventh Circuit has analyzed Alabama's statutory scheme with a view to determining the appropriate limitations period for application to section 1983 actions. *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985). *Wilson*

presented the *Jones* court with the task of choosing between two Alabama limitations periods applicable to different types of tort claims for damages for "personal injuries," *id.* at 1253. Alabama law prescribes a six-year period for actions "for any trespass to person or liberty, such as false imprisonment or assault and battery," Ala. Code § 6–2–34(1) (1975), and a one-year period "for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." Ala.Code § 6–2–39(a)(5) (1975). The six-year period applies to all Alabama "trespass" actions, whereas the one-year period applies to actions for "trespass on the case." *Id.* at 1254. Unlike *McKay,* which found this distinction to be "irrelevant" for section 1983 purposes, the *Jones* court carefully analyzed the "essential nature" of a section 1983 claim "by searching the legislative history of the statute and isolating the particular type of wrong that was most paradigmatic, the one category of wrongs that legislators intended first and foremost to address," *id.* at 1255. The Eleventh Circuit concluded that

> [P]ersonal injuries sounding in trespass make up the most significant subset of claims within Section 1983. The paradigmatic personal injuries covered by the statute, those that motivated the Congress to take action, were acts of intentional and direct violence on the part of the Ku Klux Klan....
>
> The extensive legislative history demonstrates that members of the 42d Congress considered direct acts of violence against black citizens to be the paradigmatic wrong addressed by the new statute. Hence, the essential nature of a Section 1983 claim fits the description of trespass under Alabama law. We conclude on the basis of Congressional intent and the Supreme Court's opinion in *Wilson v. Garcia, supra,* that a Section 1983 claim should be characterized as a personal injury action along the lines of a trespass.

*Id.* at 1255–56. Thus, the court held that Alabama's six-year limitations period for

"trespass" actions would be borrowed in section 1983 actions.

In prescribing limitations periods Maine law does not explicitly distinguish between "trespass" actions and "actions on the case." But Me.Rev.Stat.Ann. tit. 14, § 753 does distinguish most intentional torts for invasion of personal rights, including assault, battery, false imprisonment, libel and slander, from other personal injury actions. Certain other intentional torts, such as invasion of privacy and intentional infliction of emotional distress, were not recognized by Maine law until after the enactment of the two-year limitations period in section 753.[4] *See Estate of Berthiaume v. Pratt,* 365 A.2d 792 (Me.1976) [recognizing tort of invasion of privacy]; *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979) [recognizing tort of intentional infliction of emotional distress]; *Wallace v. Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117 (1970) [recognizing that plaintiff may recover for negligent infliction of emotional distress without physical injury, thus foreshadowing *Vicnire* ]. While it is uncertain whether Maine courts would apply the two-year limitations period in section 753, rather than the six-year residuary limitations period of section 752, to these newer intentional torts, *but cf. Gashgai v. Liebowitz,* 703 F.2d 10 (1st Cir.1983) [section 753 would apply to "false light" invasion of privacy although this newer tort is not listed in that section], the Maine statutory scheme, distinguishing the then-recognized intentional torts infringing on personal rights from other torts, is closely analogous to the Alabama law dichotomy between "trespass" and "trespass on the case; " indeed, the distinction between intentional torts and negligence represents the modern version of the now-"antiquated" trespass-case dichotomy. *See* W. Prosser, *Torts* § 7 (4th ed. 1971).[5]

■ ·Assault, battery, false imprisonment, slander and libel are intentional torts which directly infringe upon personal rights; as such, they are more akin to "the paradigmatic wrong" intended to be addressed by the 1871 congressional enactment of section 1983—"direct acts of violence against black citizens," *Jones v. Preuit & Mauldin,* 763 F.2d at 1256, than are the other, principally unintentional, personal injury torts which, by default, are governed by Maine's six-year limitations period. Therefore, section 1983 claims arising in Maine are more appropriately governed by the two-year limitations period in section 753.[6] *See id.*

This conclusion is at odds with the apparent view of the Tenth Circuit in cases decided prior to the Supreme Court decision in *Wilson v. Garcia, supra.* However, as previously noted, *see* text *supra* at 7, those cases were decided by the Tenth Circuit

---

**4.** The two-year limitations period for assault, battery, false imprisonment, slander and libel was first embodied in Rev.Stat.1916, ch. 86, § 87.

**5.** Professor Prosser has explained:

The distinction [between trespass and case] was not one between intentional and negligent conduct. The emphasis was upon the causal sequence, rather than the character of the defendant's wrong. Trespass would lie for all direct injuries, even though they were not intended, and the action in the case might be maintained for those which were intended but indirect.

. . . .

Modern law has almost completely abandoned the artificial classification of injuries as direct or indirect, and looks instead to the intent of the wrong doer, or to his negligence. *Id.* at 29.

**6.** The two-year limitations period of section 753, although shorter than Maine's residuary period, is not so short that it "fails to take into account the practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts," *Burnett v. Grattan,* — U.S. —, —, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (U.S.1984). In two post-*Wilson* decisions the First Circuit has reaffirmed the applicability of Puerto Rico's one-year tort limitations period. *Ayala Serrano v. Collazo Torres,* 764 F.2d 47 (1st Cir.1985); *Altair Corporation v. Pesquera de Busquets,* 769 F.2d 30 (1st Cir.1985).

Nor does the application of the two-year period tend to discriminate against federal claims, a concern which prompted the Supreme Court to call for the application of state tort limitations periods rather than state limitations periods for statutory claims or claims against public officials. *Wilson v. Garcia,* — U.S. at —, 105 S.Ct. at 1949–50.

without benefit of the Supreme Court's discussion in *Wilson* and without any apparent recognition of the need in some jurisdictions, like Maine, to chose between two or more limitations periods applicable to tort actions for damages for personal injuries. The Tenth Circuit's selection of the residuary limitations period in *Mismash v. Murray City, supra,* rather than the limitations period applicable to specific personal injury torts similar to the personal injury torts governed by the Maine limitations period found in section 753, was undertaken with no explicit consideration of the historical character of section 1983 claims.

Interestingly, while affirming the Tenth Circuit in *Wilson,* the Supreme Court followed a somewhat different course in reaching its conclusion as to the proper characterization of section 1983 claims. The Supreme Court examined the "historical catalyst for the Civil Rights Act of 1871," — U.S. at ——, 105 S.Ct. at 1949. The Tenth Circuit focused on the essential nature of a section 1983 claim as asserting a violation of "personal rights." 731 F.2d at 651. Although this difference in analysis is inconsequential where a single state limitations period applies to "tort actions for the recovery of damages for personal injuries," where there is more than one such state limitations period it seems more consistent with the *Wilson* theme to look to the "historical catalyst" for section 1983, as did the Eleventh Circuit in *Jones,* not only to identify the essential character of section 1983, but also to select the one most appropriate personal injury tort limitations period.[7]

B. *Retroactivity*

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), prescribes the framework for analysis of the retrospective application of statutes of limitations:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Id.* at 106–07, 92 S.Ct. at 355 (citations omitted).

It is clear that *Wilson v. Garcia* established a new principle of law by requiring that federal courts select one state statute of limitations for *all* section 1983 claims and that this result was not "foreshadowed" by earlier Supreme Court decisions. However, in order to determine whether *Wilson* overruled "clear past precedent on which the litigants may have relied," the court must examine the status of the law prior to *Wilson,* particularly prior to the time plaintiff filed this suit.

At the time the present action was commenced on August 25, 1980, Supreme Court precedent held that for closely related claims under 42 U.S.C. § 1981, the borrowing statute (42 U.S.C. § 1988) required application of "the most appropriate" limitations period provided by state law, *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), and that for purposes of section 1983 the Court would continue its historical practice of filling any federal statute of

---

7. Plaintiff has argued that *Wilson* calls for Maine's six-year residuary period to be applied to all section 1983 claims and, therefore, that her original claim for deprivation of a liberty interest in reputation, previously dismissed on statute of limitations grounds, should be reinstated by permitting her once again to amend the complaint. In view of the court's conclusion that *Wilson* does not require the application of a limitations period different from the pre-*Wilson* limitations period applicable to such a claim, this argument must be rejected.

limitations void by borrowing "the state law of limitations governing an analogous cause of action," *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). The First Circuit, in selecting state limitations periods for application to section 1983 actions based on infringements of constitutionally protected nonproperty interests, had borrowed limitations periods applicable to tort actions or to actions for injuries to the person. *See Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945 (1st Cir. 1978) [action for warrantless search and seizure, improper arrest, and assault by state officials, controlled by three-year limitations period governing actions for injuries, including non-physical injuries, to the person, rather than general six-year period applicable to all other civil actions]; *Graffals Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir.1977) (*per curiam* ) [first amendment violations resulting in discharge from public employment actionable within Puerto Rico's one-year tort limitations period].

The District of Maine had applied the two-year limitations period of the Maine Human Rights Act, rather than Maine's six-year residuary period, to a section 1983 action alleging sex discrimination. *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1080 (D.Me.1977) (Gignoux, C.J.). In a later unpublished decision, Chief Judge Gignoux concluded, without elaboration, that *Curran* called for the six-year residuary limitations period to be applied to a section 1983 claim that a contract teacher had been denied due process in her dismissal because defendants failed to comply with statutory procedures for the dismissal of contract teachers. *Dow v. Board of Directors for S.A.D. No. 5,* Civ. No. 76–14 SD (D.Me. August 9, 1977).

The amended complaint asserts that Small had a property interest in his position as special police officer and that he was "terminated" from that position without due process. The facts and injury alleged in the amended complaint appear to focus on the reputational damage caused by an alleged defamatory communication by the city manager to Small's private employer, rather than on a wrongful termination of his special officer appointment resulting in the loss of wages he would otherwise have received from his private employer. However, for present purposes the court will treat the amended complaint as essentially asserting a denial of due process, arising out of a deprivation of plaintiff's constitutionally protected property interest in the special police officer appointment, similar to the employment dismissal in *Dow.*

In 1977 the First Circuit held that an employee dismissal challenged on first amendment grounds was subject to Puerto Rico's "tort" limitations period rather than its contract limitations period. *Graffals Gonzalez v. Garcia Santiago, supra.* However, unlike Puerto Rico, Maine has two statutes of limitations governing "torts," one of which applies to contract actions as well.

Thus, unlike plaintiff's original claim of deprivation of a liberty interest in one's reputation, for which Maine provided a tort analog (defamation), plaintiff's present claim of deprivation of a property interest in his special police officer appointment had no state law tort analog such as would have indicated that the two-year limitations period of section 753 would be borrowed for application to such a claim; nor did First Circuit precedent point to the borrowing of the two-year limitations period.

Two cases have considered whether the Supreme Court decision in *Wilson v. Garcia* should be applied retroactively. In *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.1985), the Third Circuit held that the *Wilson* analysis required the application of Pennsylvania's two-year limitations period (governing "injuries to the person ... caused by wrongful act or neglect," 42 Pa.Cons.Stat.Ann. § 5524) to plaintiff's claim for discharge without due process. In considering whether or not to apply the two-year period retroactively to bar plaintiff's claim, the *Smith* court examined the state of the law at the time the suit was filed, and found that some of the federal district courts in Pennsylvania had applied

the two-year limitations period to section 1983 claims, while others had applied a six-month limitations period. Thus, the court concluded that these decisions "should have put Smith on notice that it would not have been reasonable to wait more than two years ... to file suit." *Id.* at 195.

In *Winston v. Sanders*, 610 F.Supp. 176 (C.D.Ill.1985), the court decided that *Wilson* should not be applied retroactively to bar a section 1983 claim. At the time the *Winston* complaint was filed, controlling Seventh Circuit precedent, *Beard v. Robinson*, 563 F.2d 331 (7th Cir.1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978), held that all civil rights claims in Illinois were to be commenced within the five-year residuary period, rather than the two-year "tort" limitations period. The *Winston* court was of the opinion that plaintiff reasonably relied upon *Beard* in failing to institute the action within Illinois' two-year period as subsequently mandated by *Wilson.*

 At the time this action was commenced there was no authority, either in this district or in the First Circuit, which would have indicated that Maine's two-year

limitations period for "assault, battery, and for false imprisonment, slander, libel and malpractice of physicians and all others engaged in the healing act ..." would apply to plaintiff's section 1983 claim for deprivation of a *property* interest in a public position without due process (a claim with no apparent state law tort analog). Moreover, the unpublished *Dow* decision of this court, in 1977, would indicate that Maine's six-year residuary period would be applied to such a claim.[8] Accordingly, consistent with the analysis in both *Smith* and *Winston*, the court concludes that plaintiff was not on notice, prior to the time the complaint was filed, that it would be unreasonable to wait more than two years to bring the present claim.[9]

The remainder of the *Chevron* retroactivity analysis also counsels against the retroactive application of *Wilson* to plaintiff's suit.

The decision in *Wilson v. Garcia* had several purposes. Most important, it was designed to further "federal interests in uniformity, certainty, and the minimization of unnecessary litigation." 105 S.Ct. at 1947 [53 U.S.L.W. at 4485]. The choice of the personal injury limita-

---

**8.** Although the decision in *Dow* is not binding on this court and the deference to which that decision should be accorded under *stare decisis* principles is diminished by the fact that the decision was unpublished, it nevertheless buttresses plaintiff's claim of reasonable reliance on the applicability of the residuary limitations period.

**9.** On the other hand, plaintiff's reliance on the applicability of Maine's residuary limitations period for the *original* claim of reputational injury due to a deprivation of his liberty interest in his reputation was not reasonable. The analogy to a common law defamation was readily apparent, as indicated by plaintiff's own assertion of a pendent state law claim for defamation. Supreme Court and First Circuit authority had made it clear that this court should choose the limitations period for an analogous state law claim and that the analogy to a state law tort was entirely appropriate. *See Graffals Gonzalez v. Garcia Santiago*, 550 F.2d 687 (1st Cir.1977). Indeed, following this court's order dismissing the original complaint, the First Circuit, in *Gashgai v. Leibowitz*, 703 F.2d 10 (1st Cir.1983), applied the aforementioned analysis and held that a physician's claim of denial of due process, arising out of the state defendants' activities in

investigating plaintiff's billing and diagnostic procedures and in placing Gashgai's license to practice medicine on "probation," was barred by Maine's two-year defamation limitations period. The court viewed the "gravamen" of the complaint as consisting of defendants' alleged impairment of Gashgai's "reputation, sensibilities and ability to practice medicine." *Id.* at 12.

By reasserting a claim for damages for *reputational* injury, plaintiff's amended complaint comes perilously close to the claim in the original complaint which the court held to be time-barred, a conclusion reenforced by *Gashgai*. However, the constitutional *violation* asserted in the amended complaint, a deprivation of an asserted *property* interest in Small's position as special police officer, is distinct from any claim of deprivation of a liberty interest in his reputation, *see, e.g., Eames v. City of Logan, Utah*, 762 F.2d 83, 85 (10th Cir.1985), and the court's conclusion as to the different pre-*Wilson* limitations period applicable to the property interest claim in no way constitutes a ruling as to the damages to which plaintiff might be entitled if successful in establishing a wrongful revocation of Small's appointment.

tion over other possible choices also minimized the risks that states would provide a discriminatorily short period of limitations or one inadequate to serve the federal interests of § 1983. *Id.* at 1949 [53 U.S.L.W. 4486].

*Smith v. City of Pittsburgh,* 764 F.2d at 195–96. These purposes will not be "retarded" by the nonapplication of *Wilson* to the present suit.

Finally, in view of the fact that *Wilson* represents a substantial departure from the earlier case-by-case approach to choosing the appropriate section 1983 limitations period and that retrospective application of *Wilson* would result in barring plaintiff's claim, "the equities very strongly lean in favor of the Plaintiff and against her removal from the courthouse by a retroactive application of *Wilson v. Garcia,*" *Winston v. Sanders,* 610 F.Supp. at 179.

## III. DUE PROCESS CLAIM

Regardless of the appropriate limitations period, plaintiff's due process claim cannot withstand defendants' motion for summary judgment unless Small had a constitutionally protected property interest in his status as a special police officer which was revoked without due process.

### A. *Property Interest*

In support of her claim that Small had a property interest in his status as special police officer, plaintiff points to certain state statutes, as well as the city personnel code.

■ It is well settled that due process protections apply "only when state action deprives a person of a liberty or property interest protected by the Fourteenth Amendment." *Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984). A property right in "a state position or state employment can be created by state law ... if state (or municipal) law provides 'that a particular employment relationship will continue unless certain defined events occur' or affirmatively recognizes 'an entitlement to particular job conditions.'" *Fredericks v. Vartanian,* 694 F.2d 891, 892 (1st Cir.1982) (citations omitted), *quoting Con-*

*federation of Police v. City of Chicago,* 547 F.2d 375, 376 (7th Cir.1977).

The appointment of "[s]pecial police officers of limited jurisdiction for a term of not more than one year" is authorized by Me. Rev.Stat.Ann. tit. 30, § 2362 (Supp.1984–85). The amended complaint alleges that Small was first appointed a special police officer in April 1974 at the request of the hospital, which desired to employ Small as a security guard. Amended Complaint, ¶ 11. Small's appointment as special officer restricted the exercise of his special police powers to the confines of the hospital premises. Small was reappointed for one year on July 21, 1975, again as a special police officer for the hospital. Amended Complaint, ¶ 13. Thus, Small's status as a special police officer was linked to his continued employment as a hospital security guard.

Plaintiff alleges that, "[a]s a matter of Defendants' policy, the appointment of police officers was automatically renewed by Defendants on an annual basis and would only be terminated for cause as contained in the Personnel rules." Amended Complaint, ¶ 13. Inasmuch as each appointment term of a special police officer is limited by statute to "not more than one year," such a policy of *automatic* reappointment, insofar as it is supposed to constitute an entitlement to the status of special police officer beyond the one-year term then in force, would be contrary to the express mandate of the state statute.

Plaintiff has presented no *evidence* that there existed any such policy of automatic reappointment on the part of the City of Belfast. Small's own reappointment in July 1975, after only one prior term, does not constitute evidence of such a policy. Where defendants have moved for summary judgment it is not sufficient for plaintiff to rest on the conclusory allegations of the complaint. Fed.R.Civ.P. 56(e); *Micro-Sparc, Inc. v. Weinstock,* 758 F.2d 790, 792 (1st Cir.1985). Thus, assuming that Small was entitled to a continuation of his status of special police officer during the period of his appointment, which ended on July 21,

1976, there is no evidence that he had any legitimate expectation of reappointment.

In order to determine whether Small had a legitimate expectation, founded in law, that his special police officer appointment would not be revoked *prior to* its automatic expiration, it is necessary to examine relevant provisions of the city personnel code and relevant Maine statutes.

■ Section 18 of the city personnel code prescribes certain procedures governing "disciplinary action against any municipal employee," including "permanent dismissal from employment with the City of Belfast." Section 3(a) of the personnel code expressly restricts its application to "persons in the employ of the City." Small was not employed by the city as a special police officer. Rather, he was employed by the hospital, a private institution. His special officer appointment did not confer any right to employment by the city such as would render the city personnel code controlling. *Compare Canning v. Butcher,* 582 F.Supp. 1497 (D.Conn.1984) [city charter providing for removal for cause of "any *officer* or employee in its department that it has power to appoint" (*emphasis added*) applies to supernumerary (part-time reserve) police officers].

Next, plaintiff argues that Me.Rev.Stat. Ann. tit. 30, § 2361,[10] which provides that "police officers ... may be removed for cause after notice and hearing," applies to special police officers. But plaintiff's interpretation is belied by the structure of Subchapter III–A of Title 30, which contains three principal sections: (1) the aforementioned section 2361, which pertains to "police officers"; (2) section 2362, which pertains to "special police officers"; and (3) section 2363, which pertains to "constables."

Although it is clear that section 2361 confers a constitutionally protected property interest in the position of "police officer," *see Barber v. Inhabitants of Town of Belfast,* 460 A.2d 1001 (Me.1983), the position of special police officer created by the Legislature in 1973, 1973 Me.Laws ch. 135, is dealt with in a separate section, which itself contains no such restrictions on removal.

■ Section 2362 reads, in pertinent part:

Special police officers of limited jurisdiction *may be appointed* for a term of not more than one year *and as provided in section 2361, subsection 1* and shall have all powers of a police officer, except as specifically provided by municipal ordinance or the certificate of appointment. (*Emphasis added.*)

Stripped from its context the meaning and significance of the phrase—"and as provided in section 2361, subsection 1"—does become somewhat unclear. But subsection 2361(1) contains two sentences: the first authorizes municipal officers, except as otherwise provided by municipal ordinance, to appoint and fix the compensation of police officers for a definite term; the second sentence permits removal "for cause after notice and hearing." [11] Section 2362 specifically states that special police officers may

---

**10.** In 1976, when the events underlying this suit took place, that statute provided:

**§ 2361. Police officers**

**1. Appointment.** Except as provided in municipal charter or section 2317, subsection 1, paragraph F, the municipal officers may appoint for a definite term, control and fix the compensation of police officers, unless the municipality has provided *otherwise* under section 2152, subsection 2. Police officers may be removed for cause after notice and hearing.

According to the pleadings, affidavits and depositions, the city manager did not fix or control Small's compensation as special police officer and the city itself did not otherwise provide for such compensation by ordinance under 30 M.R.

S.A. § 2152(2). Small was appointed special police officer for the hospital for one year in April 1974. He was reappointed by the City on July 21, 1975, again for one year.

**11.** *See* note 10, *supra.*

Indicative of the restricted meaning of the term "police officers," as used in section 2361, is the Legislature's 1979 amendment of that section, 1979 Me.Laws ch. 104, to provide that "police officers, *including police chiefs* may be removed for cause after notice and hearing." (*Emphasis added.*) Me.Rev.Stat.Ann. tit. 30, § 2361 (Supp.1984–85). Thus, it is clear that "police officers" as used in this section does not include special police officers.

be *appointed* "as provided in section 2361, subsection 1." It is the *first* sentence of subsection 2361(1) which governs the *appointment* of police officers, not the *second* sentence, which deals with the *removal* of police officers. Moreover, the nature of the position of "special police officer of limited jurisdiction," which permits employees of private parties to exercise police powers within the scope of their private employment, suggests that their "removal" is a matter for the private employer and that such removals are not constrained by the second sentence of section 2361(1) limiting the power of municipal officers to "remove" police officers. Plaintiff does not claim that the defendants *removed* Small from a city position, but that the defendants *revoked* his appointment as special police officer for the hospital. The court concludes that the removal provision of section 2361(1) does not apply to Small's special officer appointment so as to confer a constitutionally protected property interest in that office.

■ Another Maine statute pointed to by plaintiff, Me.Rev.Stat.Ann. tit. 30, § 2256 (1964), is similarly unavailing. At all relevant times,[12] that statute provided:

### § 2256. Municipal functions

In addition to those offices and departments required by general law, a municipality may provide, by ordinance, for the performance of all necessary municipal functions. Except where specifically provided by statute or municipal ordinance, the municipal officers shall appoint all town officials and employees required by general law or by municipal ordinance and may remove such officials and employees for cause, after notice and hearing. Unless otherwise specified, the term of all municipal officials shall be one year. (*Emphasis added.*)

Thus, the statute by its own terms applies only to the appointment and removal of "town officials and employees required by general law or by municipal ordinance." The appointment of special police officers is not "required" by law or ordinance.

Rather, the relevant statutes provide that special police officers, like police officers, *may* be appointed. Me.Rev.Stat.Ann. tit. 30, §§ 2361–2362.

In short, neither the statutes nor the municipal ordinance provisions pointed to by plaintiff establish a legitimate claim of entitlement to the continuation of Mr. Small's status as special police officer. Nor has plaintiff offered evidence of "mutually explicit understandings" or common practices and agreements derived from Mr. Small's relationship with the city so as to create a legitimate expectation of the continuation of his status. *See Perry v. Sindermann,* 408 U.S. 593, 600–603, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972).

### B. *Revocation of Appointment*

As yet another ground for summary judgment, defendants contend that there is no genuine dispute as to the fact that Small's special officer appointment was never revoked by the defendants. In support of this contention defendants present the May 16, 1983 affidavit of the defendant city manager, indicating that he took no action, nor is he aware of any action taken by others, to formally revoke Small's appointment. The May 23, 1983 affidavit of the city clerk, stating that her examination of city records did not disclose any record of such a revocation, supports the city manager's claim that no formal revocation took place.

Plaintiff's own submissions do not indicate the contrary. According to the June 28, 1978 affidavit of the hospital administrator, Arthur Upton, the city manager called Upton and

advised me that he would ... be revoking Mr. Small's appointment as a special officer for the Hospital. He asked that in order for him to pursue this matter I write him a letter requesting that Delbert Small be relieved as a special police officer for the Hospital.

Upton further avers that

[o]n February 6, 1976, in response to [the city manager's] request, I wrote him re-

---

12. After the events in the present case, this section was amended in respects not pertinent to the present discussion. Me.Rev.Stat.Ann. tit. 30, § 2256 (Supp.1984).

questing that Mr. Small's appointment as special officer for the Hospital be rescinded, effective February 9, 1976. On February 9 I notified Mr. Small that his services were terminated, effective that date.... The reason for Mr. Small's termination was the representation to me by [the city manager] that Mr. Small's special appointment was being terminated.

Small's own deposition of May 7, 1983, at 56, contains the following:

Q. Did you ever receive anything from the City of Belfast or any employee from the City of Belfast stating that your special officer status had been terminated?

A. No.

Q. After your meeting with Mr. Upton where Mr. Upton stated that he was going to terminate you, did you receive any kind of telephone call or any other message other than in writing from anybody employed by the City of Belfast regarding your special officer status at the Waldo County Hospital?

A. I received the letter, my copy of the resignation as reserve officer.

Thus, the only evidence of "revocation" presented by plaintiff actually supports defendants' assertion that no formal revocation took place. The city manager solicited a letter from the hospital administrator requesting the revocation of Small's appointment. Instead of simply providing the requested letter, which could well have resulted in the eventual revocation of the special officer appointment by the city manager, the hospital administrator also *discharged* Small from his private employment with the hospital, including his nonpolice functions. As a result of this action by the hospital administrator, the special officer appointment, which limited Small's jurisdiction to the hospital premises, became a nullity. Thus, it is not surprising that no formal revocation of that appointment ever took place, since Small could not act as a special police officer for the hospital once he was dismissed from his hospital employment.

To be sure, the city manager, according to Upton, *intended* to revoke the appointment and did solicit the letter for that purpose. However, the city manager's announcement of his intentions did not preclude Upton from retaining Small along with his special officer appointment, if he so chose, unless and until an actual revocation took place. Indeed, absent such a revocation the hospital could have chosen to rehire Small after his discharge. Small's own description of the events surrounding his discharge indicate that Upton was not blindly acquiescing to the city manager's request for a letter. According to Small, Upton said to him on February 5, 1976, "They tell me that where you are not fit to be a reserve officer, you are also not fit to be a special officer, and I'm going to have to ask for your termination." Small Deposition, at 50.

The constitutional deprivation asserted by plaintiff is the revocation of his special officer appointment by the city manager without due process. Regardless of what the city manager may have planned to do, no actual revocation ever took place. Instead, Small was discharged by the hospital, an act within the sole discretion of the hospital administrator, even though it seems clear that his decision was strongly influenced by the communication from the city manager. But to say that this communication amounted to a revocation of the special officer appointment overlooks the fact that the city manager's communication to Upton had made it clear that the city manager contemplated taking future action *himself* with regard to the revocation, once he received the letter from Upton. Although it seems reasonable to suppose that revocation would have been sought had the hospital not dismissed Small first, there having been no revocation it is pure speculation on plaintiff's part to assert that the revocation *would have been accomplished without due process.*

■ The crux of plaintiff's claim in this case is that Small was discharged by his private employer in response to a communication from the city manager concerning Small's alleged possession of a stolen snowplow and the city manager's planned course of action. Although the city manager's actions may have constituted defamation of Small's character, those actions,

as alleged by plaintiff, do not amount to a constitutional deprivation of a property interest in his status as a special police officer.

## IV. CLAIM AGAINST CITY OF BELFAST

■ In addition to the arguments raised by both defendants, the defendant city, in particular, argues that it is not liable for the unconstitutional actions of the city manager alleged in the amended complaint. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that although a city was a "person" within the meaning of section 1983, it would not be held liable on respondeat superior theory. *Id.* at 691, 98 S.Ct. at 2036. In order for cities to be liable, the constitutional wrong must be committed pursuant to official policy.

*Cloutier v. Town of Epping*, 714 F.2d 1184, 1191 (1st Cir.1983). The complaint does not allege, nor do the subsequent submissions by plaintiff indicate, that the actions of the city manager were undertaken pursuant to any official policy. On the contrary, plaintiff asserts that the city manager's actions contravened official policy by not complying with established city personnel procedures. Nevertheless, plaintiff argues that the city manager's conduct constituted "an official act of the City of Belfast." This is no more than an argument for liability under respondeat superior. Although the city manager may have been acting "under color of" his position and discretionary *authority* as city manager, it does not follow that his actions were pursuant to any city *policy*. Accordingly, the defendant City of Belfast is entitled to a dismissal of the claims against it on this ground, as well as the grounds heretofore discussed.

## V. CONCLUSION

Under the approach recently articulated in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (U.S.1985), for determining the appropriate state limitations period to borrow for section 1983 claims, Maine's two-year limitations period governing most intentional torts for personal injury damage, rather than its six-year residuary period, must now be applied to all section 1983 claims. However, this holding does not apply retroactively to bar plaintiff's deprivation of property interest claim. Moreover, *Wilson* makes clear that applying the two-year limitations period in the Maine Tort Claims Act would contravene the policies behind the section 1983 remedy. Thus, plaintiff's amended complaint is not time-barred.

Considering the alternative grounds for summary judgment presented by the defendants, the court concludes that plaintiff's testate had no constitutionally protected property interest in his special police officer appointment and, even assuming the existence of such a constitutionally protected interest, there remains no genuine issue as to the fact that no deprivation of that interest ever occurred through the revocation of the special officer appointment without due process. In addition plaintiff has neither alleged nor submitted any evidence indicating any basis for imposing liability on the defendant city for the defendant city manager's actions.

Upon the court's *de novo* review of the Magistrate's recommended decision granting summary judgment to defendants, that recommended decision is ACCEPTED, albeit for different reasons. Defendants' motion for summary judgment is GRANTED. The Clerk is directed to enter final judgment for defendants dismissing all claims.

SO ORDERED.