Charles H. OUELLETTE, et al.

v.

STURM, RUGER & CO., INC.

Supreme Judicial Court of Maine.

Argued June 6, 1983.
Decided Oct. 6, 1983.

Stephen M. Winnick (orally), Watertown, Mass., Roger J. Katz, Augusta, for plaintiffs.

Preti, Flaherty & Beliveau, Robert Checkoway (orally), John J. Flaherty, Portland, for defendant.

Before GODFREY *, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

Plaintiff, Charles H. Ouellette, brought suit in the United States District Court, District of Maine, to recover for personal injuries alleged to have resulted from the accidental discharge of a revolver manufactured by the defendant, Sturm, Ruger & Co., Inc. (Ruger). The United States Court of Appeals for the First Circuit has certified five questions to us, pursuant to 4 M.R.S.A. § 57 (Supp.1982–1983) and Rule 76B of the Maine Rules of Civil Procedure for our instructions concerning matters of state law.

The factual background and procedural history, as certified to this Court, may be summarized as follows: Ruger is a Delaware corporation with its principal place of business in Connecticut. It has manufacturing plants in Connecticut and New Hampshire, and is registered to do business in both states. In all other states, including

---

* GODFREY, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

Maine and Massachusetts, sales are conducted solely through independent local distributors. Ruger is not registered to do business in either Maine or Massachusetts, and has neither permanent employees nor registered agents within those states. Ruger ships products from its manufacturing plants to its distributors in Maine and Massachusetts, and also ships products which have been repaired or serviced directly to consumers in those states. Sales of products shipped to Maine and Massachusetts during the period from 1971 to 1980 exceeded five million dollars in each state.

Ruger manufactured the .44 calibre magnum Super Blackhawk single action revolver that is the subject of this suit at its plant in Southport, Connecticut. The revolver was sold to one of Ruger's regular distributors in Massachusetts in 1971, and was eventually acquired, second-hand, by plaintiff from a Massachusetts gun retailer on June 28, 1975. At that time, plaintiff was a resident of Massachusetts and had been so for several years. Plaintiff moved to Maine within one month after he had purchased the gun. By October of that year, plaintiff had accepted a job in Jay, Maine, working as a welder on a construction project which was expected to take two years to complete. Plaintiff had become engaged to his present wife, and the couple inquired about obtaining a Maine marriage license and began to search for a home in the Lewiston area.

On or about November 10, 1975, plaintiff was seriously injured while on a hunting trip in Plymouth, Maine. Plaintiff alleges that due to a defect in the Ruger revolver, the revolver accidentally and unexpectedly discharged while in a holster strapped to his leg. Following the accident, plaintiff was hospitalized in Maine for several weeks. While in the hospital, he was married. After his discharge from the hospital in December of 1975, he and his wife returned to Massachusetts, where they have since resided. Plaintiff alleges that he was compelled to return to Massachusetts because he was totally and permanently disabled from employment as a result of his injuries.

Plaintiff commenced this suit in the United States District Court on January 16, 1981, five years and two months after the date of his injury. Federal jurisdiction was based on diversity of citizenship. In relevant part, plaintiff's complaint seeks recovery on the basis of strict liability in tort and on the basis of the breach of an implied warranty.

Following service of process on Ruger in Connecticut, pursuant to Maine's "long-arm statute," 14 M.R.S.A. § 704–A (1980), Ruger moved for summary judgment. It argued that Maine's "borrowing statute," 14 M.R.S.A. § 866 (1980), required the court to apply Massachusetts' three and four year limitation periods in bar of plaintiff's claim.[1] Maine's borrowing statute provides that:

> No action shall be brought by any person whose cause of action has been barred by the laws of any state, territory or country while all the parties have resided therein.

The court concluded that the statute did apply and required the application of the Massachusetts limitation periods and granted defendant's motion for summary judgment. Plaintiff appealed to the United States Court of Appeals for the First Circuit, and the certification of questions of state law followed.

It is our decision to respond as follows to each of the certified questions.

1. *Is the defendant subject to long-arm jurisdiction and service of process in Maine in this case?*

We decline to answer the question. This Court has previously held that the scope of jurisdiction permissible under Maine's long-arm statute, 14 M.R.S.A. § 704–A, is co-extensive with the fullest

---

1. Mass.Gen.Laws Ann. ch. 260, § 2A (West 1980) provides a three-year statute of limitations for tort actions or "actions of contract to recover for personal injuries." Mass.Gen.Laws Ann. ch. 106, § 2–725 (West 1976) provides a four-year statute of limitations for a breach of warranty claim.

limits of jurisdiction permitted by the concept of due process under the United States Constitution. *Tyson v. Whitaker & Sons, Inc.,* 407 A.2d 1, 3 (Me.1979), 411 A.2d 389, 391 (Me.1980); *Labbe v. Nissen Corp.,* 404 A.2d 564, 569 n. 4 (Me.1979).

The remaining issue involves the application of federal constitutional law to the facts of this case, a task which goes beyond the authority granted to this Court under 4 M.R.S.A. § 57.

2. *Is plaintiff's action barred in Maine by the borrowing provision of 14 M.R.S.A. § 866?*

The borrowing provision of 14 M.R.S.A. § 866 states:

No action shall be brought by any person whose cause of action has been barred by the laws of any state, territory or country while all the parties have resided therein.

Plaintiff concedes that he resided in Massachusetts from the time of his discharge from the hospital in December of 1975 through 1981 when the present suit was commenced. He further concedes that the time for bringing an action in Massachusetts had expired during that interval and that his suit would be barred if Maine's borrowing statute required the application of Massachusetts' statutes of limitation.

■ The question is resolved by interpreting the statutory phrase "while all the parties have resided therein." Ruger contends that for purposes of the borrowing statute it should be deemed to have been a resident of Massachusetts throughout the period from 1975 to 1981. The parties have stipulated that Ruger was amenable to service of process under the Massachusetts "long-arm" statute. In effect Ruger would have us re-write the borrowing statute to read: "while all the parties have resided therein *or have been amenable to suit under the laws of that state and subject to service of process under that state's long-arm statute.*" Given the plain language of the borrowing statute, we cannot adopt such a strained construction. The statute clearly provides that both parties must reside in the same state at the same time in order for the borrowing provision to be applicable. *Hossler v. Barry,* 403 A.2d 762, 765 (Me. 1979), *Frye v. Parker,* 84 Me. 251, 254, 24 A. 844, 844 (1892). It has long been established that a corporation is a resident of that state in which it is incorporated. *See Chafee v. Fourth National Bank,* 71 Me. 514, 528–29 (1880) ("A corporation can exist only within the sovereignty which created it, although, by comity, it may be allowed to do business in other jurisdictions, through its agents. It can have but one legal residence, and that must be within the State or sovereignty creating it.")

It is clear that the legislature sought to prevent forum shopping in enacting the borrowing statute. That statute was enacted in response to this Court's decision in *Thompson v. Reed,* 75 Me. 404 (1883). In that case, we upheld a suit brought by a New York plaintiff against a New York defendant on a promissory note executed and payable in New York. Although the suit was barred under the laws of New York, this Court permitted the suit on the basis that Maine did not have a borrowing statute.

The interpretation proposed by Ruger would prove to be totally unmanageable and would lead to inconsistency and uncertainty. If two corporations were involved in litigation and both were amenable to service of process in several of the same states, the proffered interpretation would require the court to determine: (1) which states could exercise personal jurisdiction over both parties consistent with the laws of that state and due process under the United States Constitution; (2) what the applicable period or periods of limitation were in each of those states; and (3) whether the suit would have been barred had it been brought in any one of those states. Such an absurd result is not required in order that the legislative purpose be served.

We construe the borrowing statute as requiring that both the plaintiff and the defendant reside in the same state at the same time rather than merely being amena-

ble to service of process in that state. Plaintiff's actions are not barred by the borrowing provisions of 14 M.R.S.A. § 866.

3. *If plaintiff's actions are not barred by the provisions of 14 M.R.S.A. § 866, do Maine's conflict of laws rules require application of the statute of limitations of Maine, Massachusetts or Connecticut?*

 Under traditional choice of law rules, the forum state generally applies its own statute of limitations to a cause of action, even though it may apply the substantive law of another state. *See Alropa Corp. v. Britton,* 135 Me. 41, 44, 188 A. 722, 723 (1936). We have recently reaffirmed this principle and the well-established exceptions in *Hossler v. Barry,* 403 A.2d 762, 766 (Me.1979). The present case falls squarely within the general rule and Maine's conflict of laws rules require the application of the Maine statute of limitations.

4. *If plaintiff's action was timely brought under Maine's applicable statute of limitations, is plaintiff's breach of warranty claim specifically time-barred under Maine law?*

 As originally enacted in 1963 the Maine version of the Uniform Commercial Code required that an action for breach of warranty be commenced within four years of the date on which the action accrued. 11 M.R.S.A. § 2–725(1) (1964). Section 2–725(2) provided that a cause of action accrued and a breach of warranty occurred at the time delivery of the goods was ten-

dered. By the time of defendant's 1971 sale of the gun involved in this case, the Maine legislature had expanded significantly the scope of warranty liability. In a series of enactments the legislature eliminated the requirement of privity and extended warranty protection to those persons who might reasonably be expected to use, consume or be affected by the goods.[2] Prior to 1973, however, the legislature did not specify any accrual event for the cause of action created by elimination of the requirements of privity. This Court has not previously determined whether the cause of action accrued upon the initial tender of delivery for warranty claims arising in the absence of a contractual relationship. In 1973 the legislature amended section 2–725 (P.L.1973, ch. 442, § 1) to provide a general six-year statute of limitations in cases of personal injury, with the cause of action accruing at time of injury. 14 M.R.S.A. § 751 (1980). The applicability clause of the 1973 act contained the proviso that the amendments "shall not be construed to affect any cause of action arising prior to the effective date of this Act."

Ruger now contends that plaintiff's cause of action for breach of warranty arose in 1971 at the time the gun was originally sold to its distributor and that the 1973 amendments are inapplicable. Plaintiff contends that as a remote purchaser with no contractual relationship his cause of action did not arise until his injury in 1975 and therefore that the 1973 amendments are applicable to his claim. The differing interpretations result from the fact that although the concept of accrual was prospectively changed by the legislature's amendment of section 2–725,

**2.** As originally enacted section 2–318 provided as follows:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

11 M.R.S.A. § 2–318 (1964). P.L.1969, ch. 327, § 1 (effective October 1, 1969) amended section 2–318 to read as follows:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods.

the accrual event remains undetermined for those causes of action which involved a tender of delivery prior to 1973 and an injury after 1973 to a non-contractual claimant.

We conclude that plaintiff's cause of action did not accrue in 1971 when defendant tendered delivery of the gun to its distributor. Only when plaintiff came into possession of the gun in 1975 did he achieve the status of a foreseeable user which could serve as the predicate for the assertion of warranty liability in the event of injury. We hold that the non-contractual liability resulting from the elimination of privity and premised upon a status measured by reasonable foreseeability sounds in tort rather than in contract,[3] and is subject to the limitations applicable to torts. 14 M.R.S.A. § 752 (1980). The legislative extension of liability is not based upon contractual intent but is purely a matter of social policy. In the absence of a contrary statement of legislative intent the general rule prevails that the action accrues "when the *particular* potential plaintiff has a judicially recognizable claim against the defendant." *Williams v. Ford Motor Company,* 342 A.2d 712, 718 (Me.1975) (emphasis in original). Even before the 1973 amendments, section 2–725 did not apply to persons other than the contracting parties. We adopt the rationale set forth in *Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095 (3rd Cir.1980) and *Salvador v. Atlantic Steel Boiler Co.,* 256 Pa.Super. 330, 389 A.2d 1148 (1978).

Plaintiff's cause of action did not arise prior to the effective date of the 1973 amendments and is not barred by the previous version of section 2–725(2) nor is it precluded by the applicability clause of the 1973 Act. The action has been brought within the time specified in the applicable general statute of limitations.

**3.** The distinction between tort and contract is best described by Professor Prosser:

> The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which

*5. Is plaintiff's claim for strict liability in tort viable under Maine law?*

This question and the underlying question involving choice of substantive law is controlled by our decision in *Adams v. Buffalo Forge Co.,* 443 A.2d 932 (Me.1982). Because there is "clear controlling precedent," it is unnecessary for this Court to furnish further instructions concerning this question of state law. 4 M.R.S.A. § 57.

The Clerk will transmit these instructions to the United States Court of Appeals for the First Circuit.

So ordered.

All concurring.

give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people.

W. Prosser, Law of Torts, 613 (4 ed. 1971).