Shirley KERSHNER, Anthony Kershner, and Daniel Kershner, Plaintiffs,

v.

BELOIT CORPORATION and Black Clawson Company, Inc., Defendants,

v.

SCOTT PAPER COMPANY, Counterclaim Defendant.

Civ. No. 82–0303–P.

United States District Court, D. Maine.

June 27, 1985.

Edward T. Dangel, III, Frank L. McElroy, Dangel & Sherry, Boston, Mass., Maurice A. Libner, Brunswick, Me., for plaintiffs.

Gerald F. Petruccelli, John P. Erler, Portland, Me., Vernon I. Arey, Waterville, Me., Ellen A. Gorman, Richard J. Kelly, Portland, Me., for defendants.

MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CLAIMS OF BREACH OF WARRANTY AND MINOR PLAINTIFF'S CLAIMS FOR LOSS OF CONSORTIUM

GENE CARTER, District Judge.

This matter is before the Court for decision on the issues generated by the defense of Beloit and Black Clawson that Plaintiffs' Counts II and IV are barred by lack of privity between the Plaintiffs and the Defendants and by the applicable statute of limitations, 14 M.R.S.A. § 752. The parties have agreed that these defenses are to be decided on the written submissions of counsel and the oral arguments made at the final pretrial conference. Report of Final Pretrial Conference and Order, at 2. The Complaint. alleges that Plaintiff Shirley Kershner was an employee of Scott Paper Company at its Winslow, Maine facility and

that in the course of her duties on August 11, 1981, the Plaintiff's left hand was badly injured when it became caught between two large, unguarded rollers in a portion of the paper-making machine known as the calendar stack. The machine was manufactured by Defendant Beloit and was sold by Beloit to Scott in 1931.

The Complaint states three claims on behalf of Shirley Kershner: negligence (Count I); breach of warranty (Count II); and strict liability (Count III). Incorporating pertinent allegations of the prior counts, Count IV asserts the claim of Kershner's two minor children, Anthony and Daniel, for their loss of parental society and services. The breach of warranty count of the Complaint alleges that the Defendant expressly and impliedly warranted that the machine and stack were safe, merchantable, and fit for their intended purposes. A breach of the alleged warranties is also set out in the Complaint, and "the Plaintiff asserts that she relied upon the warranties made by the Defendant and suffered great personal injury and loss of income as the direct and proximate result of reliance on the warranties, and as the direct and proximate result of the breaches of warranties by the Defendant." Amended Complaint, at 5. The Complaint contains, however, no allegation of the existence of privity of contract between the Plaintiffs and either Defendant.

Beloit and Black Clawson argue that absent an allegation of the existence of privity between the Plaintiffs and the Defendants, Count II fails to state a claim upon which relief can be granted under Maine law. It is agreed by the parties that Beloit's sale of the machinery in question to Scott Paper Company occurred in 1931. Plaintiffs' Amended Complaint alleges that the rebuilding of the "calendar stack portion" of the paper machine in question by Black Clawson occurred "in the 1960's." The record presently before the Court does not further refine in temporal terms the specific year in which that activity occurred.

## I. Privity

■ Relying on *Hurd v. Hurd*, 423 A.2d 960 (Me.1981), Defendants contend that the liability of a manufacturer to a plaintiff user of its product is determined by the law of Maine as it existed at the time of the sale, not the time of the injury. They assert, therefore, that Plaintiffs' claim against Beloit is barred for lack of privity because in 1931, the year of Beloit's sale of the paper machine in question, Maine law required privity of contract for assertion of warranty claims.[1] This Court thinks that the decision in *Hurd* is called into question by subsequent development in Maine law. The Court will, therefore, decline to decide Defendant's Motion to Dismiss and will certify the question to the Law Court if the issue is still viable after trial. *See Fishermen's Net, Inc. v. Weiner*, 608 F.Supp. 1283 (D.Me.1985).

In *Hurd v. Hurd*, the plaintiff brought both negligence and breach of warranty claims against the manufacturer of a piece of farm equipment who had sold it in 1960. Defendant Hurd, plaintiff's employer-father, had bought it second hand in 1971. The Law Court held that plaintiff's lack of privity with the manufacturer, as determined by Maine law in 1960, barred him from recovery in both negligence and breach of warranty. Stating that the legislature had expressly declared its intention that its Uniform Commercial Code enactments should not be given retrospective effect, the Court in *Hurd* concluded that "Plaintiff's claims are thus not aided by those changes in Maine's law regarding privity, all of which took place after the initial sales transaction by defendant Clark." Id. at 964.

In *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me.1982), the Law Court addressed the negligence claims of a plaintiff who was injured in 1979 by a drill press sold by defendant to plaintiff's employer through

---

1. Although Black Clawson adopts Beloit's argument on the privity issue, it acknowledges that a factual question remains as to when its transaction with Plaintiff's employer took place and that the resolution of the privity issue as to Black Clawson may be determined by that fact.

an intermediary company in 1967. The Court overruled *Hurd* and another similar case, *Burke v. Hamilton Beach Division, Scovill Manufacturing Co.*, 424 A.2d 145 (1981), and held that "lack of privity does not constitute a bar to an action alleging *negligence* on the part of the manufacturer." *Adams v. Buffalo Forge Co.*, 443 A.2d at 939 (emphasis added). In doing so, the Court drew a clear distinction between actions which sound in contract and those which sound in tort:

> Contractual recovery is predicated in the first instance upon a consensual obligation between two or more parties. *McNally v. Nicholson Manufacturing Co.*, 313 A.2d [913] at 923. The common law, recognizing the consensual underpinnings of the contractual relationship, understandably required privity between parties as a condition precedent to recovery for breach of contract.

*Adams, supra,* at 938. The Court went on to point out that tort recovery (e.g., for negligence) does not rest upon "a consensual relationship":

> The status relationship which constitutes the predicate for tort recovery is entirely independent from and, indeed, foreign to any notions of the consensual features which form the basis of contractual liability. The *status* relationship is not born of an agreement between the parties but rather is created when the requisite events necessary to support a cause of action in negligence merge—which occurs at "the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek vindication."

*Id.* (quoting *Williams v. Ford Motor Co.*, 342 A.2d 712, 718 (Me.1975)).

Although *Buffalo Forge* appears to leave *Hurd* and *Burke* intact as they state the law on warranty claims, that result is called into question by the recent Law Court decision in *Ouellette v. Sturm, Ruger & Co., Inc.*, 466 A.2d 478 (Me.1983), a case not cited by any of the parties in this action. In *Ouellette*, the Court addressed the question, certified by the First Circuit Court of Appeals, of when a cause of action for breach of warranty accrues for a plaintiff injured in 1975 by a second hand gun sold initially by the defendant manufacturer to its distributor in 1971. Defendant contended that plaintiff's cause of action for breach of warranty arose in 1971 at the time the gun was originally sold to its distributor. It further contended that 1973 amendments to the Uniform Commercial Code providing a general six-year statute of limitations for claims for personal injury based on allegations of breach of warranty, with the cause of action accruing at the time of injury, were inapplicable. Plaintiff contended that his cause of action did not arise until the date of his injury in 1975. The Court stated:

> [t]he differing interpretations result from the fact that although the concept of accrual was prospectively changed by the legislature's amendment of 2–725, the accrual event remains undetermined for those causes of action which involved a tender of delivery prior to 1973 and an injury after 1973 to a non-contractual claimant.

*Id.* at 482–83.

In a marked turn from the *dicta* in *Buffalo Forge*, the Court characterized the plaintiff in *Ouellette*, who was suing for breach of warranty, as a "non-contractual claimant." *Ouellette*, 466 A.2d at 483. Using this characterization as its foundation, the Court held

> that the non-contractual liability resulting from the elimination of privity *and premised upon a status measured by reasonable foreseeability* sounds in tort rather than in contract, and is subject to the limitations applicable to torts.... In the absence of a contrary statement of legislative intent the general rule provides that the action accrues "when the *particular* potential plaintiff has a judicially recognizable claim against the defendant." ...
>
> Plaintiff's cause of action did not arise prior to the effective date of the 1973 amendments and is not barred by the previous version of section 2–275(2) nor

is it precluded by the applicability clause of the 1973 Act.

*Id.* (first emphasis added, second emphasis in original).

This case, like *Ouellette*, involves a tender of delivery prior to 1973 and an injury after 1973 to what the Law Court now has termed a non-contractual claimant. Plaintiff's claim also results from the elimination of privity in 11 M.R.S.A. § 2–318, as construed by *McNally v. Nicholson Manufacturing Co.*, 313 A.2d 913. The Court thinks it possible that since the Law Court has apparently recharacterized warranty claims as lying in tort rather than contract, it would alter its view of the requirement of privity in the assertion of such claims as it did in *Buffalo Forge* for claims of negligence. It is also arguable that the Law Court in *Ouellette* has decided the issue *sub silentio*. However, since the Law Court did not mention *Buffalo Forge, Hurd,* or *Burke* in the *Ouellette* decision, and since the facts in that case involved a sale which had taken place after the abolition of any privity requirements in the Commercial Code, this Court is not certain whether and how it should apply *Ouellette* to this case in which one sale is alleged to have taken place in 1931 and the other in the 1960's. Any decision on this matter will involve serious policy considerations, *see Adams v. Buffalo Forge*, and should therefore be left to Maine's highest court. *See Fishermen's Net, Inc. v. Weiner*, 608 F.Supp. 1283.

If their privity defenses fail, Defendants Black Clawson and Beloit have raised statute of limitations defenses to the warranty claims based on *Hurd* and *Burke*. None of the parties has cited *Ouellette*, the language of which seems broad enough to encompass this case. Again, because of the disparity in the dates of the sales by the manufacturer Defendants in *Ouellette* and in this case, the Court deems it appropriate to let the Maine court also decide whether the time for accrual of a personal injury warranty action is determined under *Ouellette* or earlier precedent.

### III.   *The Minors' Consortium Claims*

■ The Motions to Dismiss by Beloit and Black Clawson also attack Count IV of the Complaint *in toto* on another rationale. The assertion made in support of the motion is that Count IV fails to set forth a claim for relief which has viability under Maine law. That count seeks to recover on behalf of the Plaintiff minor children for their loss of the society and services of their mother, Plaintiff Shirley Kershner, resulting from her physical injury. Counsel agree that the Maine Law Court has not ruled upon the question of whether there exists under the substantive law of Maine such a cause of action. Likewise, it is agreed that no general cause of action in a minor child to recover for that child's loss of consortium of the parent has been specifically created by the Maine legislature. Plaintiffs argue that three of the old Maine cases and what they term "emergence of the modern trend" in other jurisdictions should persuade this Court that, if confronted with the need to decide that issue, the Maine Law Court would conclude that such a cause of action is available under Maine law.

The Court is persuaded to the contrary for a number of reasons. All of the precedents relied upon by the Plaintiffs in advancing this argument are clearly distinguishable in that none of them indicate any right of recovery under Maine law to exist in a minor child for loss of services of the child's parent. All of them permit recovery by a *parent* for the parent's loss of services of the child. That is conventional consortium doctrine and has unquestionably been in place in Maine since 1826. In *Emery v. Gowen*, 4 Me. 33 (1826), the Court allowed a father to recover for the seduction of his daughter. The holding of the case permits the father to recover for his damages resulting from loss of services of the daughter. The same is true of Plaintiffs' other cases, *Kennard v. Burton*, 25 Me. 39 (1845), and *Beaudette v. Gagne*, 87 Me. 534 (1895). None of the cases cited by the Plaintiffs, nor any case which the Court has been able to find by its independent research, contains any hint of a right in a

minor child to recover damages for the child's loss of consortium of the parent. In fact, in *Sawyer v. Bailey*, 413 A.2d 165 (Me.1980), the Law Court in *dicta* stated that "[t]he authorities agree that the benefits of the doctrine do not extend to children." The Court thinks it unlikely that the Maine Law Court will ultimately come to conclude that such a cause of action exists under Maine law. As the Defendants point out, every Maine trial court which has considered the issue to date has found that no such cause of action exists under Maine law. *See Burke v. International Minerals and Chemicals Corp.*, CV–82–396 (Me.Super.Ct., Pen.Cty., March 18, 1982); *Griffin v. Robbins Electrical and Supply Co.*, CV–81–113 (Me.Super.Ct., Cum.Cty., Jan. 29, 1982). Moreover, the clear majority rule in other jurisdictions, as pointed out by the Defendants, rejects the existence of such a claim for relief. *See* Restatement (Second) of Torts § 707A and subsequent annotations.

Courts of those other jurisdictions have found a multiplicity of reasons for rejecting the existence of such a cause of action: (1) the lack of precedent for such a cause of action; (2) the uncertainty and remoteness of the damages which would flow from such a cause of action; (3) the danger of duplication of recovery between the child and parents; (4) the unsettling effect that the creation of such a cause of action would have upon a parent's settlement negotiations with tortfeasors; (5) the increased risk of falsification in order to recover under such a cause of action; (6) the potential for increased insurance costs; (7) the potential harm to the integrity and sanctity of the family unit; (8) the lack of statutory authority for the creation of such a cause of action; and (9) the legal basis of a child's claim to the services of the parent under the substantive law of the state in question. Taken *in toto* these considerations are persuasive to this Court for the proposition that such a cause of action is not warranted. Their persuasive impact would not be lost upon the Maine Law Court were the question to be considered by it. The Court is fully satisfied that no

such cause of action exists under Maine law at the present writing.

Accordingly, it is hereby ORDERED that the Motions to Dismiss of Beloit and Black Clawson as to Count IV of the Complaint, be, and are hereby, GRANTED and said Count IV is hereby DISMISSED.

Defendants' Motion to Dismiss the breach of warranty claim set forth in Count II is hereby DENIED.

So ORDERED.