Jong Hee SMALL, Personal Representative of the Estate of Delbert Small, Plaintiff, Appellant,

v.

The INHABITANTS OF the CITY OF BELFAST and James Murphy, etc., Defendants, Appellees.

No. 85–1861.

United States Court of Appeals, First Circuit.

Argued March 4, 1986.

Decided June 27, 1986.

Thomas B. Benjamin, Lewiston, Me., with whom Stephen P. Sunenblick and Sunenblick, Fontaine & Reben, Portland, Me., were on brief, for plaintiff, appellant.

James D. Poliquin, with whom Norman & Hanson, Portland, Me., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

Plaintiff, Jong Hee Small, personal representative of the estate of Delbert Small, appeals the district court's dismissal of her section 1983 action (42 U.S.C. § 1983) against the City of Belfast, Maine, and James Murphy, city manager of Belfast. Plaintiff's testate Delbert Small ("Small"), filed suit alleging violations of the Due Process Clause of the Fourteenth Amendment. His allegations stemmed from his claim that he was discharged from his position as a security guard at the Waldo County General Hospital as a result of a communication from defendant Murphy informing the hospital that Small had been found in possession of a stolen snow plow and that Small's appointment as a special police officer would be revoked.

By order dated September 23, 1982, the district court dismissed Small's liberty interest claim as barred by a borrowed Maine two year statute of limitations. *Small v. Inhabitants of the City of Belfast,* 547 F.Supp. 761 (D.Me.1982). On October 2, 1985, the court granted summary judgment on Small's amended complaint which asserted a property interest claim; it held that Small did not possess a constitutionally protected property interest in his special officer appointment, and alternatively, that the defendants had not revoked Small's special officer appointment. The court at the same time ruled that the defendant City of Belfast was entitled to dismissal on

the additional theory that the plaintiff had made no allegations that the unconstitutional actions of the city manager were undertaken pursuant to any official policy. *Small v. Inhabitants of the City of Belfast,* 617 F.Supp. 1567 (D.Me.1985). We reverse and remand as set forth below.

*Statute of Limitations*

Defendants assert that both plaintiff's liberty and property interest claims are barred by the applicable two-year statute of limitations borrowed from Maine state law. The district court judge accepted defendants' arguments and dismissed the liberty claim as untimely, having been filed beyond the two-year period. As for the property interest claim, while the judge found that the two-year period was equally applicable as to that count, he refused to apply his holding retroactively.[1]

The recent decision of *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) establishes the method for determining the appropriate statute of limitations for purposes of section 1983 actions. In that case, the Supreme Court ruled that in identifying the most analogous state statute of limitations to be applied in section 1983 cases,[2] a single limitations period is to be selected and that limitations period should be the one applicable to tort actions for recovery of damages for personal injury. The issue here is which Maine statute fits the criteria of *Wilson* so as to provide the appropriate limitations period.

The district court judge ruled that the Maine two-year statute of limitations applicable to defamation, assault and battery,

---

* Of the District of Rhode Island, sitting by designation.

**1.** The district court's ruling dated September 23, 1982, that plaintiff's liberty interest was barred by the applicable Maine statute of limitations was made without benefit of the decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In its consideration of plaintiff's property interest claim on October 2, 1985, however, the district court once again held that a two-year statute of limitations was applicable and explicitly considered *Wilson v. Garcia* in its decision. The court considered the merits of Small's property claim despite this ruling because it found that the decision as to

the limitation period should not be applied retroactively to this case because property claims before *Wilson v. Garcia* would have been subject to a six-year statute.

**2.** The Reconstruction Civil Rights Acts do not contain a specific statute of limitations governing § 1983 actions. When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt an analogous state or local limitation as federal law if it is not inconsistent with federal law or policy to do so. *See Wilson v. Garcia,* 105 S.Ct. at 1942.

false imprisonment, and medical malpractice, 14 M.R.S.A. § 753, was the appropriate single limitations period to be selected for all section 1983 actions. In so doing, he rejected adoption of the Maine six-year statute of limitations applicable to all other "personal injury" claims, except for those instituted against certain professionals, 14 M.R.S.A. § 752. Relying on *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986), the district court judge reasoned that while the Maine statutes of limitations do not explicitly distinguish between "trespass" actions and "actions on the case," the Maine statutory scheme does distinguish most "intentional" torts for the invasion of personal rights (covered by section 753) from all other personal injury actions, principally "unintentional" torts (covered by section 752). Therefore, he concluded that as in *Jones,* section 1983 claims arising in Maine are more appropriately governed by the two-year limitations period applicable to intentional torts because they "directly infringe upon personal rights; as such, they are more akin to 'the paradigmatic wrong' intended to be addressed by the 1871 congressional enactment of section 1983—'direct acts of violence against black citizens'...." 617 F.Supp. at 1573 (quoting *Jones,* 763 F.2d at 1256).

We are in agreement with the plaintiff that the district court erred in adopting the Maine two-year statute of limitations, 14 M.R.S.A. § 753, and find that the Maine six-year statute of limitations, 14 M.R.S.A. § 752, is the appropriate one to be used for section 1983 cases in the state of Maine. We reach this conclusion based on a reading of the *Wilson v. Garcia* case, an evaluation of the various Maine limitations periods, and an analysis of other federal cases adopting a single limitations period for section 1983 cases.

In determining that all section 1983 actions should be characterized as "involving claims for personal injuries," the Supreme Court in *Wilson v. Garcia* indicated that it made such a characterization so as to be sure to encompass the broad range of potential tort analogies section 1983 has been used to invoke. 105 S.Ct. at 1948. Indeed, the Court even enumerated the "numerous and diverse topics and subtopics," *id.* at 1946, which have been the subject of section 1983 suits: "discrimination in public employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard," *id.* (footnotes omitted), loyalty oath requirements in state law, prohibitions on the wearing of armbands in protest of government policy in Vietnam, restraint of prosecution of "subversive" activities, bans on lawyer advertising, spending limitations on the public education activities of charities, deprivation of welfare benefits and utility service without adequate notice or hearing, mandatory maternity leave policies, state restrictions on social security benefits, state restrictions on the right to vote and right to marry, and prison inmate and mental patient First Amendment and due process rights within institutions, *id.* at 1946 n. 31.

This myriad assortment of section 1983 claims illustrates the reason the *Wilson v. Garcia* Court chose the broad category, "personal injuries," as the appropriate statutory analogy for statute of limitations purposes. These suits are not easily characterized as "trespass" claims or "trespass on the case" claims, nor does the "intentional"—"unintentional" dichotomy contribute to the analysis of many claims, such as those based on challenged legislation or regulations. These suits are not primarily or even nearly analogous to assault and battery, false imprisonment, or defamation. At best, these suits can only be characterized very generally as claims involving "personal injuries." In fact, the Court admitted that, as to the specific suit before it, the section 1983 claim was "arguably analogous to distinct tort claims for false arrest, assault and battery, or personal injuries," 105 S.Ct. at 1945; and yet, the

Court rejected a more specific and narrow characterization and chose the broad category of "personal injuries" as the characterization to be given section 1983 suits for statute of limitations purposes.

Bearing in mind the language and direction of the *Wilson v. Garcia* case, we turn next to an evaluation of the various Maine limitations periods. Section 572 provides that:

> All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state or of a justice of the peace in this State, and except as otherwise specially provided.

It is plainly apparent from the language of this provision as well as from its application by the Maine courts that section 752 is applicable to all tort actions, including personal injury tort actions, except where the Maine legislature has specifically provided otherwise in a separate statutory provision. *See, e.g., Ouellette v. Strum, Ruger & Co.,* 466 A.2d 478, 483 (Me.1983) (action to recover for personal injuries alleged to have resulted from accidental discharge of revolver encompassed under general six-year statute, section 752); *Anderson v. Neal,* 428 A.2d 1189, 1190 (Me.1981) (personal injuries resulting from legal malpractice covered by section 752); *Hossler v. Berry,* 403 A.2d 762, 766 (Me.1979) (personal injury damages for pain and suffering as a result of an automobile accident governed by section 752); *Williams v. Ford Motor Company,* 342 A.2d 712, 718–19 (Me.1975) (plaintiff's claim for personal injuries from tort product liability covered by section 752).[3]

By contrast, section 753 is a narrow exception to the general limitations statute and is only applicable to a few specific, enumerated torts:

> Actions for assault and battery, and for false imprisonment, slander, libel and malpractice of physicians and all others

engaged in the healing art shall be commenced within 2 years after the cause of action accrues.

It is true, as the district court indicated, that we have previously concluded that section 753 is applicable beyond its specific terms to the tort of "false-light" privacy because that tort had not been recognized by the Supreme Judicial Court of Maine until after the passage of sections 752 and 753 and because of the close relationship between the torts of "false-light" and defamation. *See Gashgai v. Leibowitz,* 703 F.2d 10, 12–13 (1st Cir.1983). We do not believe, however, that our reasoning in that case means that section 753 is to be read well beyond its words to cover all "intentional" torts even if they have not been therein enumerated. As noted in *Anderson v. Neal,* 428 A.2d 1189, 1193 (Dufresne, J., dissenting on other grounds) (emphasis in original), with respect to the appropriate statute of limitations for a legal malpractice claim:

> Since the Legislature never enacted a *specific* limitations statute respecting actions for damages on account of legal malpractice as it did in the case of medical malpractice, causes of action based on the wrongful conduct of attorneys, whether in contract or tort, must be commenced, as mandated by 14 M.R.S.A., § 752, within 6 years after the cause of action accrues and not afterwards, since this general provision requires that "all civil actions," except as otherwise provided, be so commenced.

We believe that this rationale is generally applicable so that most "personal injury" actions, whether intentional or not, would be covered by section 752, rather than section 753.

Our conclusion is further buttressed by the legislative history of the Maine statutes of limitations. The predecessor statute to section 752 was R.S. 1954, c. 112 § 90. This provision stated, in relevant part, that *all* actions of trespass, except those for assault and battery and false imprison-

---

**3.** We emphasize that section 752 is the general limitations provision and is not merely a residu-

al provision. *See Wilson v. Garcia,* 105 S.Ct. at 1942.

ment, and *all* actions on the case, except for slander and libel, were governed by a six-year limitations period. Thus, the preceding statutory scheme for · limitations periods designated a six-year period for all tort actions, including personal injury actions both intentional and unintentional, except for assault and battery, false imprisonment, slander, and libel. The superceding and current provisions, sections 752 and 753, did not alter this scheme, but merely were part of an effort to secure one form of civil action and procedure. The Maine legislature intended section 752 to apply to all civil actions, and consequently to all torts, whether originally sounding in trespass or trespass on the case, *unless* a separate statutory provision was to the contrary. *See* P.L. 1959, c. 317; Field, McKusick and Wroth, Memorandum to the Judiciary Committee of the 99th Legislature on Redraft of L.D. 1198, Chap. 112, Secs. 90–99 (April 16, 1959).

Finally, we find support for our adoption of the six-year limitations period in the decisions of other federal courts selecting an appropriate statute of limitations for section 1983 actions. These courts have consistently adopted a more general statutory provision over statutes covering only assault and battery, false imprisonment, or libel and slander. *See, e.g., Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984) (proper statute is Kan.Stat. Anno. § 60–513(a)(4), "an action for the injury to the rights of another, not arising on contract, and not herein enumerated," rather than § 60–514(2), "an action for assault, battery, malicious prosecution, or false imprisonment"), *cert. denied,* — U.S. —, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); *Mishmash v. Murray City,* 730 F.2d 1366, 1367 (10th Cir.1984) (proper statute is Utah Code Ann. § 78–12–25(2), "an action for relief not otherwise provided by law," rather than § 78–12–29(4) governing "an action for libel, slander, assault, battery, false imprisonment or seduction"), *cert. denied,*

— U.S. —, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985);[4] *Rodriguez v. Village of Larchmont,* 608 F.Supp. 467, 476–77 (S.D.N.Y. 1985) (proper statute is N.Y.Civ.Prac. Law § 214, "an action to recover damages for a personal injury," rather than § 215(3), "an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander...."); *Ohio Civil Service Employees Association v. Seiter,* No. C–1–85–530 (S.D.Ohio 1985) [Available on WESTLAW, DCTU database] (proper statute is Ohio Rev. Code § 2305.10, "bodily injury or injury to personal property", rather than §· 2305.11, "libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice").

The decision relied on by the district court, *Jones v. Preuit & Mauldin,* is not to the contrary. In *Jones,* the Eleventh Circuit adopted the six-year Alabama statute of limitations governing all actions "for any trespass to person or liberty, such as ·false imprisonment or assault and battery," Ala.Code § 6–2–34(1), rather than the one-year statute of limitations applicable to actions "for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section," Ala.Code § 6–2–39(a)(5). Because the Alabama provisions governing personal injury actions differentiated between all actions of trespass and all actions of trespass on the case, the court was forced to make a similar analysis of section 1983 cases. It decided that, given the choice, section 1983 cases were more analogous to intentional torts, rather than unintentional torts, because of the historical context of lynchings, whippings, and kidnappings in which the section 1983 statute was originally passed.[5]

Unlike the Alabama statute in *Jones,* the Maine statutes do not clearly separate all intentional from all unintentional torts. Instead, section 753 only singles out a few specific intentional torts for different treatment from a much larger universe of all

---

**4.** Although *Hamilton* and *Mishmash* preceded the *Wilson v. Garcia* decision, the courts followed the approach later adopted in *Wilson.*

**5.** In *Gates v. Spinks,* 771 F.2d 916 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986), the Fifth Circuit took the same approach when faced with similar Mississippi statutes.

torts, including those involving personal injury, treated under section 752. To the extent the *Jones* case goes beyond this reasoning and suggests that the statute of limitations applying to select torts such as assault and battery, false imprisonment, and slander and libel should be adopted for section 1983 purposes, we reject such analysis as against the weight of authority and inconsistent with *Wilson v. Garcia.*

■ Accordingly, we conclude that the Maine six-year limitations period, 14 M.R.S.A. § 752, is the statute applicable generally to "personal injury" actions. As directed in *Wilson v. Garcia,* section 752 is, therefore, to be employed in suits brought pursuant to section 1983 and should have been applied in Small's suit.[6] We remand for the district court's consideration the merits of Small's liberty interest claim as that has not yet been addressed below. We will go on, however, to consider the merits of his property interest claim as that issue has been raised on this appeal.

*Property Interest Claim*

Small claims he had a property interest in his public employment as a "special police officer" created by various state and municipal statutes and ordinances restricting the grounds upon which certain employees may be discharged. Alternatively, he claims his property interest was created by implied contract, mutually explicit understandings, or common practice and agreements. He then asserts that he was deprived of this property interest without due process because the defendants revoked his appointment without the required notice or hearing.

■ A property interest in public employment can be created by state statute or municipal ordinance that restricts the grounds upon which an employee may be discharged. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 42 L.Ed.2d 684 (1976); *Cleveland Board of Education v. Laudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). On appeal, the plaintiff points to three specific state statutes and municipal ordinances as the basis for his property interest in his employment as a special police officer.[7] First, he looks to 30 M.R.S.A. § 2361(1) in conjunction with 30 M.R.S.A. § 2362 which provide as follows:

§ 2361(1)

Appointment. Except as provided in municipal charter or section 3217, subsection 1, paragraph F. the municipal officers may appoint for a definite term, control and fix the compensation of police officers. Unless the municipality has provided otherwise under section 2152, subsection 2, police officers may be removed for cause after notice and hearing.

§ 2362

Special police officers of limited jurisdiction may be appointed for a term of not more than one year and as provided in section 2361, subsection 1 and shall have all powers of a police officer, except as specifically provided by municipal ordinance or the certificate of appointment.

A plain reading of section 2362 incorporates section 2361(1) in its entirety so that its terms are applicable to special police officers of limited jurisdiction, including the provision requiring removal for cause, after notice and hearing.

6. The defendants have raised the issue of retroactivity: whether the six-year limitations period should be applied to this case so as to "revive a stale claim." We believe that applying section 752 to this case is consistent with *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). It was not so crystal clear that Small's liberty interest claim was subject to a two-year statute of limitations. *See Dow v. Board of Directors of S.A.D. No. 5,* Civ.No. 76–14–P (D.Me. Aug. 9, 1977) (dismissal of a contract teacher without hearing or compliance with statutory dismissal procedures subject to six-year statute of limitations). In addition, the federal policies embodied in section 1983 are furthered by permitting this claim. *See, e.g., Smith v. City of Pittsburgh,* 764 F.2d 188, 194–96 (3d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

7. Below, the plaintiff also pressed 30 M.R.S.A. § 2256 as a source of his property interest claim. He has not reasserted that argument on appeal, however, so we will not consider it here.

The district court concluded, however, that the removal provision of section 2361(1) did not apply to Small's special officer appointment so as to confer a constitutionally protected property interest in that office. He reasoned that the cross-reference only incorporates the first sentence of section 2361(1) which specifically deals with appointment, but does not incorporate the second sentence dealing solely with removal. He further reasoned that "the nature of the position of 'special officer of limited jurisdiction' which permits employees of private parties to exercise police powers within the scope of their private employment, suggests that their 'removal' is a matter for the private employer and that such removals are not constrained by the second sentence of section 2361(1) limiting the power of municipal officers to 'remove' officers." 617 F.Supp. at 1579. The contention of the plaintiff here dealt with revocation, rather than removal, thus making the second sentence inapplicable.

■ We reject this reasoning and hold that these two Maine statutes created a property interest in the plaintiff's position as a special police officer of limited jurisdiction. We see no reason for denying the plain reading of the statute; section 2362 refers to section 2361(1) in its entirety, not simply to the first sentence. Additionally, the entire subsection appears under the heading "appointment." While a cause removal provision normally might not be deemed an aspect of appointment, the legislature in this instance determined that it was, and we will not quibble with this legislative classification. Contrary to the district court, we do not believe that because a special police officer of limited jurisdiction may be "removed" by his private employer, he cannot also lose his position by virtue of action taken on the part of the municipality. Whether such action is called "removal" or "revocation" we believe that this issue is more one of seman-

tics than anything else, a result of cross-referencing a provision which covers employees in a slightly different posture than is a special police officer of limited jurisdiction. In *Barber v. Inhabitants of Town of Fairfield*, 460 A.2d 1001, 1005 (Me.1983) the Maine Supreme Judicial Court held that section 2361(1) restricted the grounds upon which a police chief can be discharged and gave him a property interest in public employment; we find that section 2362, applicable to special police officers of limited jurisdiction, but incorporating the same section 2361(1), creates a similar property interest for Small in this case.

■ As this set of statutes creates a property interest, we need not address the other arguments plaintiff makes about the source of his property right.[8] We next address the district court's alternative ground for granting summary judgment to defendants on this issue: that defendants never revoked Small's "special" officer appointment and therefore never acted to deprive him of a property right. We do not believe that this issue can be resolved appropriately by means of summary judgment given the current state of the record.

There is some confusion in the record about exactly what positions Small held with the City of Belfast and exactly how he was terminated from those positions. In Small's deposition and the exhibits pertaining to Small's application and appointment, references were made to both a "special" officer position, the loss of which is the focus of the complaint and the district court opinion, as well as a "reserve" officer position. Small clearly thought of the two positions as distinct jobs with distinct duties. As a "reserve" police officer, Small claimed he had all the duties of a regular patrolman, throughout the city, but only on a call-up basis; as a "special" police officer, Small believed he had the powers of an officer, but only on particular premis-

---

**8.** Small also looked to 30 M.R.S.A. §§ 2317(1)(F), (N) (town managers have power to appoint and remove for cause "all other officials") and Section 18 of the Administrative Personnel Code of the Belfast City Ordinances (city manager may take disciplinary action against "any municipal employee" for just cause and must provide written notice and reasons for such action) as sources of his property interest.

es, those of Waldo County General Hospital. The Maine statutes and the City of Belfast departmental rules and regulations, however, refer only to the former job.

The city manager seems to have ordered the chief of police to have Small resign from his "reserve" officer position, or so Small understood. Small believed that he retained his "special" officer position and did not resign from that job at the same time. Thus, in his pleadings, Small does not allege that he was forced out of his special officer job by virtue of his resignation; instead, he alleges that the defendants indirectly caused the loss of that position by notifying the hospital that Small's special officer appointment was being revoked, thereby causing the hospital to fire Small. But there are indications in the record that the City Manager believed that Small, by resigning, ceased all relationship with the city, whether involving the "reserve" or "special" officer duties. For example, the record evidence of the office as to which Small took an oath describes it simply as "Special Police Officer." (R.A. 236) Given this unsatisfactory state of the record and our inability to sort out Small's employment with the city, we cannot be sure that the city may not have directly forced Small to give up the only position he held when it demanded his resignation, in addition to any problems relating to his job loss by virtue of the communications to the hospital.

Further, as to Small's "special officer" appointment with the Waldo County General Hospital, we have serious reservation about allowing, on summary judgment, the city manager to accomplish indirectly something he would be liable for under section 1983 if done directly. Based on the affidavits and depositions submitted below, it is undisputed that the defendants technically took no formal action to revoke Small's "special" officer appointment, but at most notified the hospital administrator that the city *would be* revoking Small's appointment and that the hospital should submit a letter requesting that Small be relieved of his appointment. The hospital, clearly influenced by the communication from the city manager to the effect that Small was no longer fit to be a "special" police officer, never waited for the formal revocation of Small's appointment, but instead discharged Small from his position at the hospital and then submitted the requested letter. The city or city manager never acted upon the letter. Small's appointment as a "special" officer simply expired as a matter of law once he was discharged by the hospital since the appointment was of "limited" jurisdiction, *i.e.*, limited to his status as a security guard for Waldo County General Hospital.

On summary judgment we must view the evidence in the light most favorable to the plaintiff, the party opposing the motion. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). From the affidavit submitted by the hospital administrator responsible for firing Small from Waldo County General Hospital, as well as from similar indications elsewhere in the record, it is clear that it was a communication or action by the city manager that resulted in the loss of Small's job and, consequently, his "special" officer appointment:

> The reason for Mr. Small's termination was the representation to me by Mr. Murphy that Mr. Small's appointment was being terminated.

> Upton Affidavit, ¶ 4 (Record Appendix at 481).

Although Small's appointment expired as a matter of law once he was discharged, the real cause of his discharge was the statement by Murphy that Small's special police officer appointment was going to be revoked. Accordingly, we reverse the district court's grant of summary judgment on the property interest claim as well and remand that issue for trial.

*Liability of City of Belfast*

Small also claims error in the district court's alternative ground for ruling that the City of Belfast be dismissed from the action. The court reasoned that the plaintiffs had made no allegations that the alleg-

edly· unconstitutional actions of the city manager were undertaken pursuant to any official policy; consequently, under the decision of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the city could not be held liable solely on a theory of respondeat superior and had to be dismissed from the action.

The Eighth Circuit has recently discussed the meaning of *Monell* with respect to facts similar to those presented here. In *Williams v. Butler*, 746 F.2d 431 (8th Cir. 1984),[9] a municipal judge fired two employees in violation of their First Amendment rights. Based on evidence that the city had given municipal judges final authority to make their own personnel decisions, the court followed decisions of the Second, Third, Fourth, Fifth, Ninth, and Eleventh Circuits [10] concluding that in areas where a local governmental official alone is the " 'final authority or ultimate repository of ... power', that official's 'conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" ' for purposes of § 1983." *Id.* at 436 (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) ). Consequently the court upheld the district court's entry of judgment against the city, based solely on the actions taken by the municipal judge.

As discussed in *Williams v. Butler*, 746 F.2d at 437, the Fifth Circuit in *Bennett v. Slidell*, 728 F.2d 762 (5th Cir.1984) (en

banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) seems to have reversed its earlier position, at least as applied to non-personnel situations or third parties, and held that in order to impose municipal liability under section 1983

the local governing body itself must have acted unconstitutionally, or must have been directly responsible for the formal policy or custom pursuant to which the unconstitutional act was taken. *Id.* at 767. Further, unless a local governing body has expressly or impliedly appointed an official to act in its place, that body cannot be held responsible for the acts of that official. *Id.* at 769. Thus, even though, in *Bennett*, the acts taken by the city officials may have been unconstitutional, and even though those authorities were final authorities on the decisions in question, the city was not liable for those acts. *See id.* at 770.

The implications of these statements with respect to the case at bar, however, are unclear. The Fifth Circuit panel did not expressly overrule its earlier rulings in *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir.1980), *Schneider v. City of Atlanta*, 628 F.2d 915 (5th Cir.1980), and *Bowen v. Watkins,* 669 F.2d 979 (5th Cir.1982) which adopted the "final authority" approach. In addition, the court expressly distinguished the *Familias* case on the grounds that the county judge obtained his policymaking authority by virtue of the

---

**9.** On rehearing en banc of this case the district court's judgment was again affirmed by an equally divided court. 762 F.2d 73 (8th Cir. 1985).

**10.** *See, e.g., Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (court held city liable for unconstitutional discharge of employee by supervisors who had final authority on personnel decisions for the city's health and hospitals corporation); *Black v. Stephens,* 662 F.2d 181, 191 (3d Cir.1981) (court held city liable for policy promulgated by police chief, which led to the filing of false charges by police officer against a citizen complainant), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876·(1982); *Wellington v. Daniels,* 717 F.2d 932, 936, 937 & n. 6 (4th Cir.1983) (court held that police chief's choice and implementation of practices and procedures reflected government

"policy" because he was the final authority, but found insufficient evidence that chief had encouraged a policy of police brutality); *Hart v. Walker,* 720 F.2d 1436, 1445–46 (5th Cir.1983) (county would be liable for a county supervisor's acts if supervisor was the final authority on the issue—remanded for a factual determination of final authority); *McKinley v. Eloy,* 705 F.2d 1110, 1116–17 (9th Cir.1983) (court held city liable for unconstitutional discharge of a police officer by city manager who had final authority on personnel decisions); *Berdin v. Duggan,* 701 F.2d 909, 914 (11th Cir.) (city ordinance delegated final authority over city personnel decisions to mayor, so city was liable for mayor's unconstitutional discharge of city employee), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983).

office to which he was elected, rather than from the governing local authority. On that basis, the "final authority" approach would still be applicable to this case because by statute the city manager has been given authority to remove all persons he is authorized to appoint. 30 M.R.S.A. § 2317(1)(A), (C), (E), (F), (N). Consequently, we do not believe the new Fifth Circuit reasoning warrants a different conclusion here than would *Williams v. Butler.* In any event, we find the Eighth Circuit approach more persuasive.

In addition, the recent Supreme Court decision in *Pembaur v. City of Cincinnati,* — U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) is supportive of our position on this issue. In that case, the court ruled that a municipality may be held liable under section 1983 for a single decision by municipal policymakers under appropriate circumstances. Thus, a county prosecutor made official policy and exposed his municipal employer to liability, by instructing law enforcement officers to make a forcible entry without a search warrant, where Ohio law authorized the county sheriff to obtain instructions from the county prosecutor and the sheriff followed the practice of delegating certain decisions to the prosecutor where appropriate. While there was no majority opinion as to what constitutes a municipal policy, a plurality of the court indicated that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 1299. Additionally, Justice Stevens separately indicated that in his view municipal liability attaches to those acts performed by government agents in the course of their employment. *Id.* at 1303.

 Accordingly, we believe it is in conformity with the *Pembaur* decision and the reasoning of *Williams v. Butler* that liability could attach to the City of Belfast by virtue of unconstitutional action taken on the part of the city manager, if he indeed had the final authority to revoke Small's appointment as a special police officer. We, therefore, also reverse the district

court's decision on that issue and remand for a determination of the city's liability on that basis.

LEVIN H. CAMPBELL, Chief Judge (concurring and dissenting).

Whether Mr. Small had a protected property interest in his public employment as a "special police officer," and whether there is evidence of an actionable infringement of any such interest, are close and difficult questions. While I respect this court's well-stated position, I find that I am in substantial agreement with the district court's disposition of these matters. In all other respects I join fully in this court's opinion.